No. 54,681

ROBERT F. HUSTEAD AND JOY K. HUSTEAD, *Plaintiffs-Appellants,* v. THE BENDIX CORPORATION, THE AVCO LYCOMING CORPORATION, THE PIPER AIRCRAFT CORPORATION, MIDWEST AIRCRAFT SALES, INC., MIDWEST PIPER FLIGHT, INC., MIDWEST PIPER SALES, INC., and MIDWEST PIPER, INC., *Defendants-Appellees.*

(666 P.2d 1175)

Opinion filed July 15, 1983.

*Robert Martin,* of Martin, Pringle, Oliver, Triplett & Wallace, of Wichita, argued the cause, and *John P. Woolf* and *Martin W. Bauer,* of the same firm, were with him on the briefs for the appellants.

*Alvin D. Herrington* and *Eric E. Davis,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, argued the cause and was on the brief for the appellee, Bendix Corporation.

*Fred L. Maars,* of Wichita, argued the cause and was on the brief for the appellee, Avco Lycoming Corporation.

*Rex G. Beasley,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *John T. Conlee* and *Thomas J. Lasater,* of the same firm, were with him on the brief for the appellee, The Piper Aircraft Corporation.

*F. C. McMaster*, of McMaster & McMaster, of Wichita, argued the cause and was on the brief for the appellee, Midwest Piper, Inc.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiffs, Dr. Robert F. Hustead and Joy K. Hustead, his wife, to recover damages for personal injuries suffered in an airplane crash. The defendants involved on this appeal are the Bendix Corporation, Avco Lycoming Corporation, The Piper Aircraft Corporation, and Midwest Piper, Inc.

Each plaintiff's action was brought on the basis of three legal theories: (1) negligence, (2) strict liability in tort, and (3) breach of implied warranty under K.S.A. 84-2-314. The trial court sustained the separate motions of the defendants for summary judgment on the basis that the action of each plaintiff was barred by the statute of limitations. Plaintiffs have appealed to this court.

The facts in this case were not fully developed by discovery, and it appears to us that there are serious factual issues in the case which have not been fully explored. However, many of the essential facts are undisputed and are as follows: On or before December 29, 1976, Hustead Aviation Enterprises, Inc. sold a Piper Lance aircraft to the Husteads. On January 8, 1978, Dr. Hustead, accompanied by his wife, Joy, his two daughters, Barbara and Rhonda, and another guest, was flying the airplane when it crashed in Sedgwick County, resulting in serious personal injuries to the plaintiffs and to other passengers. Three years later on January 8, 1981, the present action was filed in district court. Each of the defendants raised the defense that the plaintiffs' actions were barred by the applicable statute of limitations.

The defendants contended in the district court, as they do in this court, that the statute of limitations applicable to each plaintiff's cause of action based on negligence and strict liability in tort is K.S.A. 60-513, which requires that the action be filed within two years from the date the cause of action accrued. They maintain that, since the plaintiffs first suffered substantial injury on the date of the crash, January 8, 1978, plaintiffs were required to file their lawsuits based upon negligence and strict liability not later than January 8, 1980. Since the actions were filed on January 8, 1981, plaintiffs' causes of action in negligence and strict liability in tort are barred by K.S.A. 60-513.

As to each plaintiff's cause of action based on breach of implied warranty arising from the sale of products, the defendants maintain that the applicable statute of limitations is K.S.A. 84-2-725 which requires a claim for breach of warranty to be filed within four years after tender of the product. Using the date of December 29, 1976, as the date when the Piper aircraft was sold to plaintiffs, each of the defendants contend that the plaintiffs were required to file their action for breach of warranty within four years from that date, which would be December 29, 1980. Since plaintiffs' action was filed on January 8, 1981, more than four years after December 29, 1976, each plaintiff's cause of action for breach of implied warranty is barred under K.S.A. 84-2-725. On this appeal, counsel for plaintiffs concedes that the two statutes mentioned govern the period of limitations for filing actions in this case.

The response which plaintiffs asserted in the trial court to the defense of the statute of limitations was that of equitable estoppel. Stated simply, the basis of plaintiffs' contention is that, while the actions were pending, the agents of the United States Aviation Underwriters (USAU) representing all of the defendants admitted that they were liable to the plaintiffs, agreed to pay all of the plaintiffs' damages, and made advance payments to the two plaintiffs totaling $280,000. The evidentiary record indicates that on or about July 20, 1978, USAU paid Dr. Hustead $125,000, and Joy K. Hustead $65,000 in advance payments on their claims. On November 29, 1978, USAU paid Dr. and Mrs. Hustead jointly $70,000 on their claims. A final payment was made to Mrs. Hustead in the amount of $20,000 on or about September 12, 1979. The specific factual circumstances about these payments has not been fully explored by discovery.

At that point, USAU refused to make any further payments. On December 5, 1980, counsel for plaintiffs requested the agent of USAU to extend the statute of limitations which plaintiffs' attorney stated would run on January 8, 1981. USAU was unwilling to extend the statute of limitations but indicated that the case was now capable of being settled. On January 8, 1981, plaintiffs filed their lawsuit. In December of 1981, all defendants filed motions for summary judgment on the basis of the running of the statute of limitations. On March 18, 1982, summary judgment was granted to each of the defendants on that basis.

On the appeal, the plaintiffs also rely on two Kansas statutes which provide for the tolling of the statute of limitations under certain circumstances. Those two statutes are K.S.A. 60-520 and K.S.A. 40-275, which will be discussed in the course of the opinion.

The first point raised by the plaintiffs on the appeal is that the trial court erred in granting summary judgment to defendants and in rejecting plaintiffs' claim of equitable estoppel, (1) because it did so without permitting discovery and supplemental affidavits, (2) because the court selected the wrong date for the commencement of the statute of limitations, and (3) because it resolved conflicting factual questions as to the parties' state of mind and credibility. The leading case in Kansas on the issue whether a defendant is estopped from raising the statute of limitations is *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102 (1978). In *Bowen*, a trial court granted summary judgment to the defendants on the ground the action was barred by the statute of limitations. The plaintiffs claimed that the defendants were estopped from defending on the basis of the statute of limitations. On appeal, this court reversed holding that on the basis of the evidentiary record, taken in the light most favorable to the plaintiffs, it was error for the trial court to conclude that as a matter of law there was no genuine issue as to any material fact and to enter judgment on the pleadings, depositions, and written documents. Because of the genuine factual issues, summary judgment was premature. The court recognized the rule that, in considering a motion for summary judgment, a trial court must give to a litigant against whom summary judgment is sought the benefit of all inferences that may be drawn from the admitted facts under consideration. It was stated that a court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. The court further stated that a party can be equitably estopped from reliance on the statute of limitations as a defense to the claim against him. The issue to be

determined in such a case is whether the plaintiffs' claim of equitable estoppel must be rejected as a matter of law or whether there are legitimate factual issues to be fully developed by further discovery and determined by the court.

The critical element in this case is whether the plaintiffs can show that they actually relied upon any assurances, representations, admissions, or silence of USAU when its representative had a duty to speak. It would serve no useful purpose to set forth in great detail the factual materials contained in the various affidavits submitted to the trial court. We have held on many occasions that when summary judgment is sought the parties against whom the motion is filed is to receive the benefit of all reasonable inferences that may be drawn from the facts under consideration. *Pedi Bares, Inc. v. First National Bank,* 223 Kan. 477, 575 P.2d 507 (1978). Ordinarily, a motion for summary judgment is not to be sustained if pretrial discovery remains incomplete. *Temmen v. Kent-Brown Chevrolet Co.,* 217 Kan. 223, 535 P.2d 873 (1975).

We note in the record the affidavit of Dr. Robert F. Hustead wherein he states that, after the accident occurred, he was contacted by a representative of USAU, Errol Hall, who advised him that the insurance carrier was 97% certain that the cause of the accident was the magnetoes furnished by Bendix; that the insurance company wanted Dr. Hustead and the injured members of his family to have the very best medical care available without regard to cost; and that Bendix felt obligated to restore Dr. Hustead and his family to their former status to the extent that money could do so. On another occasion, Dennis Doody, an attorney and vice-president of USAU from New York, told Dr. Hustead that it had been determined that the cause of the accident was the defective magnetoes; that his insurance company wanted everyone injured in the accident to be taken care of and treated fairly to the end that the injured persons would not pursue litigation and try to hit "the homerun ball." Doody assured Hustead that his lost wages, both past and future, would be paid and that, furthermore, Bendix, through its insurance carrier, would take care of any damages caused by the accident. Dr. Hustead, in his affidavit, also noted the advances made from USAU to the doctor and his wife in the total amount of $280,000. On December 5, 1978, the claim of Barbara Hustead was settled

by the insurance company for $1,750. In September of 1980, Rhonda Hustead's claim was settled by the company.

The affidavit of Charles J. Woodin, attorney for the plaintiffs, states that he was advised by Errol Hall, representative of USAU, that that insurance company was the insurance carrier of the Hustead's insurance on the destroyed airplane as well as the liability insurance carrier in the matter. In February of 1978, Hall advised Woodin that the National Transportation Safety Board had determined that the Bendix magnetoes had failed in flight; that the insurance company wanted all of the injured members of the Hustead family to have the very best medical care; and that the insurance company for Bendix wanted to restore all of the Hustead family to the extent that money could do so. Woodin was also present at the conversation where Dennis Doody speaking for USAU stated that it had been determined that the cause of the accident was the defective magnetoes; that his insurance company wanted everyone injured in the accident to be taken care of and treated fairly to the end that the injured persons would not pursue litigation and try to hit "the homerun ball," and that Bendix, through its insurance carrier, would take care of all injuries caused by the accident. According to Woodin, representatives of USAU met with Dr. and Mrs. Hustead on occasions when Woodin was not present.

We have concluded that the statements made to Dr. and Mrs. Hustead and to Mr. Woodin, if made, could reasonably be construed as admitting liability on the part of the insurance company and that it could have brought about delay in the filing of an action by plaintiffs. Whether or not the Husteads and their attorney relied upon these statements in delaying the filing of the action was a legitimate fact issue. We wish to emphasize, however, that some of the statements in the affidavit of Dr. Hustead and Mr. Woodin are disputed by defendants and will have to be clarified and developed on further discovery. The reliance of plaintiffs and their attorney on the affirmative statements, actions, or silence of USAU agents could not properly have been determined by the trial court as a matter of law at the time the motions for summary judgment were sustained. The situation is essentially the same as in *Bowen v. Westerhaus*, 224 Kan. 42, where a resolution of the issue of reliance necessitated a determination of the state of mind of the parties. We, therefore,

reverse the trial court in its granting summary judgment to the defendants since, in our opinion, the plaintiffs should have an opportunity to develop by further discovery the factual matters which support its contention of equitable estoppel.

A second point raised by the plaintiffs on the appeal is that the trial court erred in granting summary judgment based upon the statute of limitations, because the statute was tolled by USAU's acknowledgment of liability and in making advance payments to the plaintiffs. Specifically, the plaintiffs rely on K.S.A. 60-520(*a*) and K.S.A. 40-275 which provide as follows:

"60-520. **Part payment or acknowledgement of liability.** (*a*) *Effect.* In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

"40-275. **Advance or partial payment not admissible as admission against interest or admission of liability; credit; no recovery; limitation of actions.** No advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person, or on his behalf to others, or to the heirs at law or dependents of a deceased person of medical expenses, loss of earnings and other actual out of pocket expenses, because of an injury, death claim, property loss or potential claim against any person, firm, trust or corporation, shall be admissible into evidence as an admission against interest or admission of liability by such party or self insurer, or if paid by an insurer of such party, as the insurer's recognition of such liability with respect to such injured or deceased person, or with respect to any other claim arising from the same accident or event. Any such payments shall, however, constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person. In the event of a trial involving such a claim, the fact that such payments have been made shall not be brought to the attention of the jury: *Provided,* If after an advance payment or partial payment is made as herein provided for, and thereafter it shall be determined by final judgment of a court of competent jurisdiction that the person, firm, trust or corporation is not liable for an amount sufficient to satisfy the advance payment or partial payment, such person, firm, trust or corporation shall have no right of action for the recovery of any such a payment: *Provided further, That the period fixed for the limitation for the commencement of actions shall commence on the date of the last payment or partial payment made hereunder.*" (Emphasis supplied.)

The plaintiffs contend that, throughout the discussions, the representative of USAU conceded liability arising from the defective condition of the magnetoes manufactured by Bendix Corporation and that USAU actively pursued settlement. Furthermore, they point out that USAU made advance payments on

the admitted obligation in July of 1978, and again on November 29, 1978, to Dr. and Mrs. Hustead and on September 12, 1979, to Mrs. Hustead. These advances totaled $175,000 to Dr. Hustead and $105,000 to Mrs. Hustead. As to K.S.A. 60-520, the plaintiffs point out that defendants' claimed breach of warranty is based on K.S.A. 84-2-314 which is founded on contract. Thus, a breach of an implied warranty under K.S.A. 84-2-314 arises on a contractual theory, and, comes within the provisions of K.S.A. 60-520. The plaintiffs maintain that Dr. Hustead had four years from the last payment from USAU, being November 29, 1978, to file his action, and that Mrs. Hustead had four years from September 12, 1979, to file her action. Less than four years elapsed from either date to the date the plaintiffs filed their actions on January 8, 1981.

In their briefs, the defendants contend that K.S.A. 60-520 is not applicable because an acknowledgment which will remove the bar of the statute of limitations must be distinct, unequivocal, and without qualification, and nothing less than a direct admission of a present existing liability is sufficient, citing *Bowen v. Westerhaus*, 224 Kan. 42. In this regard, we believe that counsel for defendants have overlooked the rationale of *Fisher v. Pendleton*, 184 Kan. 322, 336 P.2d 472 (1959), which holds that a part payment is an executed acknowledgment which speaks for itself and requires no writing to establish it. Although in *Fisher* the question of the tolling of the statute of limitations by part payment involved G.S. 1949, 60-312, we believe that the logic of that case applies also to K.S.A. 60-520. The requirement of a written acknowledgment or promise in K.S.A. 60-520 pertains only to situations involving *acknowledgment* of an existing liability or a *promise* to pay the same. A part payment speaks for itself, and, when a part payment is made in a contract case, the provisions of K.S.A. 60-520 come into play, having the effect of tolling the statute of limitations.

K.S.A. 40-275 states clearly that where there is an advance or partial payment of damages, predicated on possible tort liability, the period fixed for the commencement of actions shall commence on the date of the last payment or partial payment made. K.S.A. 40-275 provides certain protections both to the claimant and also to the person against whom the claim of liability is made and his insurer. The fact that an advance or partial payment has

been made is not admissible into evidence as an admission of negligence or liability. Such a payment constitutes a credit and may be deducted from any settlement or final judgment rendered. In the event there is a trial involving the claim, the fact that such payments have been made are not to be brought to the attention of the jury. These protections are provided to the party against whom the claim was asserted and his insurer. On the other hand, the claimant is protected by the extension of the statute of limitations in the last proviso.

We note from the affidavits that these advance payments were made by USAU with the understanding they were to be *without prejudice to any of the rights of the parties.* Since the evidence may show that it was understood that the rights of *all parties* would be protected, the protections provided under K.S.A. 40-275 may come into play. As noted above, however, the factual circumstances have not been fully developed by discovery. The applicability of K.S.A. 60-520 and 40-275 are issues still to be determined by the trial court, and we make no final determination of those issues on this appeal.

In their briefs, the defendants, Avco Lycoming Corporation, Piper Aircraft Corporation, and Midwest Piper, Inc., raise a separate argument that the trial court properly granted summary judgment to them, because the record shows as a matter of law that USAU was not their agent in making any admissions or representations or payments to the plaintiffs and, therefore, those defendants were not bound by any actions of USAU, and, hence, the defense of equitable estoppel or the tolling of the statute of limitations for advance payments does not affect their defense of the statute of limitations. We have considered the record and concluded that there remain in the case factual issues on the question whether those three defendants are bound by the acts of the agents of USAU in this regard. We note the affidavits of Mr. Woodin that he was aware that USAU works as manager of the United States Aviation Group and that he was aware that that company and that group were the liability insurance carriers for Bendix, Midwest Aviation, Inc., and Avco Lycoming Corporation, and for the corporations above a fixed minimum level. Also there is in the record a letter dated January 17, 1978, to Dr. Hustead from Errol Hall of USAU indicating that that company might represent Midwest Piper Flight, Inc., in

connection with the hull loss. We further note in the record a letter from Errol Hall of USAU dated March 28, 1978, to Mr. Woodin possibly indicating its representation of Midwest Piper Flight, Inc., under an insurance policy. There is also in the record the release form signed by Rhonda Hustead which releases and discharges from liability Bendix Corporation, Avco Lycoming Corporation, Midwest Piper Flight, Inc., United States Aviation Underwriters and all other persons from the claim of Rhonda Hustead. Finally, there is a letter from Fred L. Maars, attorney for Avco Lycoming Corporation, dated November 13, 1980, to Charles J. Woodin indicating that the funds being advanced will be proportionately secured from the "various insurers on the risk." These documents, of course, are not conclusive but they present some possible evidence of participation in the advance payment of funds to the plaintiffs from various defendants in addition to Bendix. We believe that the plaintiffs are entitled to further discovery to clarify the question of USAU's representation of the various parties in the action other than Bendix, so that the issue of representation can be properly determined.

We also hold that the trial court was premature in granting summary judgment to defendant Piper Aircraft Corporation on the basis that the service of process was defective. That issue may be determined by the trial court, if it becomes relevant after all discovery has been completed.

For the reasons set forth above, we have concluded that the trial court prematurely granted summary judgment to the defendants in this case. We have further concluded that the case should be reversed and remanded to the trial court with directions to permit the parties to conduct further discovery to determine whether there are bona fide factual issues on the defense of the statute of limitations and other defenses..

The judgment of the district court is reversed and remanded with directions as set forth in the opinion.