No. 88,434

ALDENA M. ROSE, Individually and as Surviving Spouse of Lyle Rose, Deceased, and MARILYN A. CORR, as Executor of the Estate of Lyle Rose, Deceased, *Appellants/Cross-appellees*, v. VIA CHRISTI HEALTH SYSTEM, INC./ST. FRANCIS CAMPUS, *Appellee/Cross-appellant.*

113 P.3d 241

Opinion on rehearing filed June 3, 2005. (For original opinion filed October 31, 2003, see *Rose v. Via Christi Health System, Inc.*, 276 Kan. 539, 78 P.3d 798 [2003]).

*Thomas M. Warner, Jr.*, of Warner Law Offices, P.A., of Wichita, argued the cause and was on the briefs for appellants/cross-appellees.

*Don D. Gribble, II*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, argued the cause, and *Vince P. Wheeler*, of the same firm, was with him on the briefs for appellee/cross-appellant.

*Wayne T. Stratton, Charles R. Hay*, and *Anne M. Kindling*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, were on the briefs for *amicus curiae* Kansas Hospital Association.

*Lyndon W. Vix* and *David G. Seely*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

*James R. Howell, Kyle J. Steadman*, and *Douglas D. Pletcher*, of Arden J. Bradshaw & Associates, of Wichita, were on the briefs for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

LUCKERT, J.: Aldena M. Rose, surviving spouse of Lyle Rose, and Marilyn A. Corr, Executor of the Estate of Lyle Rose, deceased (hereinafter jointly referred to as Rose), plaintiffs in this wrongful death action, appeal the trial court's order allowing Via Christi Health System, Inc. (Via Christi), a postverdict offset or credit against its share of the jury award for medical expenses. An opinion was filed in this case on October 31, 2003. *Rose v. Via Christi Health System, Inc.*, 276 Kan. 539, 78 P.3d 798 (2003). We granted a motion for rehearing and, after consideration of the additional briefs and oral arguments, modify our previous opinion. We affirm the trial court's decision to allow the credit against the damages award and, since we find in Via Christi's favor on that issue, do not reach Via Christi's cross-appeal which raised an alternative argument to be considered if the trial court was reversed on the first issue.

## *Facts*

Lyle Rose, while being treated at Via Christi, fell out of bed and hit his head. After the fall, Lyle continued to be treated at Via Christi, primarily in the intensive care unit, for a subdural hematoma and other injuries resulting from his fall. He remained in the hospital until his death approximately 1 month later. Via Christi billed Lyle and his primary insurer, Medicare, for the full cost of Lyle's treatment resulting from the injuries sustained when Lyle fell. Medicare paid approximately $83,000 but did not pay approximately $154,000 of the amount Via Christi had billed.

Prior to trial, Via Christi filed a motion in limine seeking to limit evidence of medical expenses to the amount actually paid by Medicare. The trial court denied Via Christi's motion, finding that the collateral source rule applied. The court determined that the rationale of *Bates v. Hogg*, 22 Kan. App. 2d 702, Syl. ¶ 5, 921 P.2d 249, *rev. denied* 260 Kan. 991 (1996), which held that Medicaid write offs were not a collateral source, did not apply to the Medicare write offs. The trial court admitted into evidence the full amount of the Via Christi billings.

A jury found Via Christi to be 36 percent at fault and awarded total damages of $582,186.01, including $261,422.46 in medical

expenses. Via Christi's portion of the judgment totaled $209,586.96.

Thereafter, Via Christi filed a motion to offset the $209,586.96 judgment by the medical expenses Medicare did not pay or, alternatively, to offset Via Christi's proportionate share of the medical expenses portion of the judgment ($94,112.09) by the amount Medicare did not pay (approximately $154,000). Following a hearing, the trial court granted Via Christi's motion, allowing Via Christi to offset the award by $94,112.09, its pro rata share of the medical expenses damages award. Rose appealed, and the matter was transferred to this court pursuant to K.S.A. 20-3018(c).

First, Rose argues that the trial court erred because there is no law to support its decision. Rose correctly notes the trial court's failure to cite to any authority. However, such a failure does not make a decision reversible. If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision. The reason given by the trial court for its ruling is immaterial if the result is correct. See *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 239, 32 P.3d 705 (2001).

For her second argument, Rose claims that the trial court's decision is wrong because it abrogates Medicare's right to subrogation. This argument is without merit. Rose fails to explain how the trial court abrogates Medicare's rights when nothing in its decision addresses Medicare's right to subrogation. Via Christi does not seek to diminish Rose's recovery by that portion of the jury verdict representing the amount paid by Medicare, $82,862.99, which is the amount subject to Medicare's subrogation claim.

Next, Rose contends that the trial court's decision violates federal law. If a trial court's ruling does conflict with federal law, its ruling is without effect under the Supremacy Clause of the United States Constitution. See U.S. Const. art. VI, cl. 2; *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 607, 616-17, 886 P.2d 869 (1994), *cert. denied* 516 U.S. 820 (1995) (holding that common-law actions based on inadequate labeling or failure to warn are preempted by the Federal Insecticide, Fungicide & Rodenticide Act.

The statute which Rose argues conflicts with the trial court's ruling is 42 U.S.C. § 1395cc(a)(1)(A)(i) (2000), often referred to as the Medicare limiting charge statute, which provides in pertinent part:

"(a)(1) Any provider of services . . . shall be qualified to participate under this subchapter and shall be eligible for payments under this subchapter if it files with the Secretary an agreement—

"(A)(i) not to charge, except as provided in paragraph (2), any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter . . . ."

If a Medicare health care provider violates the agreement not to charge patients, the United States Secretary of Health and Human Services may terminate or refuse to renew the provider's Medicare contract. 42 U.S.C. § 1395cc(b)(2)(A) (2000). The provision applies to payments made by Medicare under subchapter 18 of the Social Security Act, which includes both primary and secondary payments.

Rose argues that, in effect, the trial court's order allowed Via Christi to "charge" Rose. Thus, we are required to interpret 42 U.S.C. § 1395cc(a)(1)(A)(i) and determine whether a credit against a damages award in an amount equal to the charges for services provided to a plaintiff by a defendant and for which the defendant has received no reimbursement is a "charge" prohibited by the Medicare statute.

Statutory interpretation is a question of law, and our review is unlimited. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

"The fundamental rule [of statutory construction] to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 [1998]). Words and phrases that have acquired a peculiar and appropriate meaning in law are to be construed accordingly. *Galindo v. City of Coffeyville*, 256 Kan. 455, 465, 885 P.2d 1246 (1994).

Applying these rules, we begin the analysis by determining what Congress intended when it stated a provider may not "charge" a beneficiary with an unreimbursed amount. The word "charge" has a particularized meaning, the effect of which is to constrain a provider's ability to treat the unreimbursed expenses as a debt of the beneficiary. See Black's Law Dictionary 227 (7th ed. 1999) ("charge" means "to impose a lien or claim; to encumber" or "to demand a fee; to bill"). However, as other courts have concluded, the Medicare statute does not specifically address situations where the provider seeks reimbursement in ways other than treating the amount as a debt of the beneficiary. See, *e.g., Joiner v. Medical Center East, Inc.*, 709 So. 2d 1209, 1221 (Ala. 1998) (health care provider can assert lien against injured party's settlement where liability insurer was primary to Medicare); *Smith v. Farmers Ins. Exchange*, 9 P.3d 335, 341 (Colo. 2000) (health care provider entitled to reimbursement from primary insurance, including amounts required by Medicare to be "written off").

In this case, the trial court's order adjusted the verdict to reflect the measure of damages to which Rose was entitled under Kansas law and was not, in a technical sense, a "charge" where the amount was treated as a debt owed by Rose. The basic principle of damages is to make a party whole by putting the party back in the same position as if the injury had not occurred, not to grant a windfall. *State ex rel. Stephan v. Wolfenbarger & McCulley, P.A.*, 236 Kan. 183, Syl. ¶ 4, 690 P.2d 380 (1984); see 25 C.J.S., Damages § 3, pp. 627-29 (quoted in *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 303, 672 P.2d 1083 [1983] [Schroeder, C.J., dissenting]).

If a defendant has paid the loss in some way, the defendant should not be required to pay again. This principle is adopted in

the Restatement (Second) of Torts § 920A (1977), which this court found consistent with Kansas common-law principles. *Harrier v. Gendel*, 242 Kan. 798, 800, 751 P.2d 1038 (1988). The Restatement (Second) of Torts § 920A provides:

"(1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

"(2) Payment made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."

Consistent with the rule stated in the Restatement (Second) of Torts § 920A(1), in *Hustead v. Bendix Corp.*, 233 Kan. 870, 877-78, 666 P.2d 1175 (1983), this court considered the effect of a partial payment of damages predicated upon possible tort liability. The court held that the advance or partial payment was not admissible into evidence under K.S.A. 40-275. The court continued, stating: "Such a payment constitutes a credit and may be deducted from any settlement or final judgment rendered." 233 Kan. at 878.

In this regard, it is important to note that the Restatement (Second) of Torts § 920A(1) and our statements of the rule speak of the tortfeasor being allowed a "credit" rather than an "offset" for the damages paid. The distinction, though seemingly minor, is technically very important. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 133 L. Ed. 2d 258, 116 S. Ct. 286 (1995). Compare that situation to a circumstance where a tortfeasor gratuitously provides a benefit to the plaintiff; the plaintiff owes no debt. The tortfeasor could not "charge" the victim or seek an offset for the gratuitous service. Yet, the tortfeasor is entitled to a credit for the benefits which the tortfeasor conferred upon the plaintiff. See Restatement (Second) of Torts § 920A, comments a, b, and c (1977). Thus, application of this principle is not the equivalent of treating the amount of the write off as a debt of the plaintiff but as an appropriate measure of recoverable damages. We see no reason that the

result should differ because the adjustment was made postverdict by the trial court, since the parties do not take issue with the procedural aspect of the ruling and the ultimate result is that the amount recovered by Rose appropriately reflects the correct measure of damages under the circumstances of this case.

The other aspect of the Restatement (Second) of Torts § 920A(2), the collateral source rule, is raised by the parties, largely as a carryover of arguments related to the cross-appeal and in response to the various *amici curiae* that focus upon the issue of whether all amounts paid by Medicare or, more narrowly, the amount of the Medicare write off should be considered a collateral source. The collateral source rule in Kansas, which is consistent with the Restatement (Second) of Torts § 920A, is stated as follows:

"At common law, the collateral source rule prevented the jury from hearing evidence of payments made to an injured person by a source *independent of the tortfeasor* as a result of the occurrence upon which the personal injury action is based. The court has stated the rule as follows: 'Under the "collateral source rule," benefits received by the plaintiff from a source *wholly independent of and collateral to the wrongdoer* will not diminish the damages otherwise recoverable from the wrongdoer.' *Farley v. Engelken,* 241 Kan. 663, Syl. ¶ 1, 740 P.2d 1058 (1987)." (Emphasis added.) *Thompson v. KFB Ins. Co.,* 252 Kan. 1010, 1014, 850 P.2d 773 (1993).

See *Gregory v. Carey,* 246 Kan. 504, 508, 791 P.2d 1329 (1990); *Wentling v. Medical Anesthesia Services,* 237 Kan. 503, 515, 701 P.2d 939 (1985); *Allman v. Holleman,* 233 Kan. 781, Syl. ¶ 8, 667 P.2d 296 (1983); *Pape v. Kansas Power & Light Co.,* 231 Kan. 441, 446, 647 P.2d 320 (1982); *Southard v. Lira,* 212 Kan. 763, 768-70, 512 P.2d 409 (1973); *Rexroad v. Kansas Power & Light Co.,* 192 Kan. 343, 354-55, 388 P.2d 832 (1964).

Under the facts of this case, the source of the $154,000 of medical services not reimbursed by Medicare was Via Christi, the tortfeasor, not an independent source. The trial court admitted into evidence the full amount Via Christi billed, and the jury awarded the amount as damages. The value of those services represents a cost incurred by Via Christi and not reimbursed by Medicare. The Medicare program is structured upon a prospective payment system under which health care providers that agree to accept primary

payment from Medicare are reimbursed on a flat fee basis determined by average cost and length of stay for various diagnostic related groups (DRG). If a provider's actual cost falls below the DRG amount, it keeps the difference; if the provider's actual cost exceeds the DRG amount, the provider absorbs or writes off the loss. Under the secondary payer statutes, the costs are limited to costs that are reasonable and customary. See 42 U.S.C. § 1395f (2000). The expenses Via Christi incurred in treating Rose exceeded the DRG amounts. This could be because of several factors, including the fact his length of stay was longer and his course of treatment more difficult than the normal or because Via Christi's costs are higher than other hospitals. Regardless of the reason, the amounts exceeded the DRG amounts. The trial court allowed these expenses into evidence, and the jury awarded the expenses as part of the damages. The value of these services was contributed by Via Christi, not a collateral source.

This same analysis has been adopted by other courts under the fact situation where the defendant was the health care provider which provided posttort treatment. For example, in *Moorhead v. Crozer Chester Med. Center*, 564 Pa. 156, 765 A.2d 786 (2001), the plaintiff filed a malpractice action after she suffered a fall at the hospital. Treatment was provided by the hospital, and Medicare provided partial reimbursement. At issue was the amount not reimbursed by Medicare. Although the Pennsylvania Supreme Court stated several rationales, one included the inapplicability of the collateral source rule: "Additionally, we find that the collateral source rule is inapplicable to the additional amount of $96,500.91. The rule 'provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer.' [Citations omitted.]" 564 Pa. at 164. After discussion of the Medicare write off in the amount of $96,500.91, the court stated: "See Restatement (Second) of Torts § 920A(2). . . . Appellant did not pay $96,500.91, nor did Medicare or Blue Cross pay that amount on her behalf. The collateral source rule does not apply to the illusory 'charge' of $96,500.91 since that amount was not paid by any collateral source." 564 Pa. at 165.

Similarly, the Georgia Court of Appeals in *Candler Hosp. v. Dent*, 228 Ga. App. 421, 491 S.E.2d 868 (1997), applied the collateral source rule to portions of the medical bills paid by Medicare but allowed the hospital a credit for those amounts written off:

"[I]n the event that the plaintiff recovers a special verdict that awards damages for medical expenses previously written off by the defendant, the defendant is entitled to a set-off or credit against the specific award of medical expenses in the verdict prior to the entry of the judgment in the amount of any write-off that the defendant made to the total medical expenses. If the jury makes no award of medical expenses as damages or there is a general verdict, then it would not be ascertainable whether such special damages for medical expenses were awarded and the defendant would not be entitled to a set-off against a general verdict for damages.

"Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole. Where damages are special and ascertainable and the defendant or its privies, indemnitor, or insurers have paid the medical expenses prior to judgment, in whole or in part, a set-off against such special damages, specifically identified and awarded in the verdict, is mandated to prevent a double recovery. [Citations omitted.] 'An injured person can have but one satisfaction for his injuries; and therefore the amount paid by the tortfeasor . . . will be regarded as a satisfaction pro tanto as to the joint tortfeasors.' [Citation omitted.] Thus, plaintiff can recover from the jury all special damages provable, but cannot receive in judgment again what has already been paid by the defendant or on the defendant's behalf by an insurer." 228 Ga. App. at 422-23.

The rationale of the Georgia court parallels Kansas common law regarding damages.

Such cases reject the argument that the plaintiff has contracted for a double recovery. For example, in *Williamson v. St. Francis Medical Center*, 559 So. 2d 929 (La. App. 1990), the trial court applied a rule that the plaintiff should receive damages in the full amount of the bill, not just as reimbursed. On appeal, the court decided the case on other grounds and stated:

"However, in the present case, the hospital, to whom the bill was owed, was also a tortfeasor. Thus, the benefit to the plaintiffs of the contractual adjustment results from the 'procuration or contribution' of the tortfeasor. As a result, we will not allow the plaintiffs to recover for the amount contractually adjusted, or cancelled, by the hospital tortfeasor." 559 So. 2d at 934.

Other cases, although not factually similar, distinguish such holdings, recognizing that the analysis is unique to the situation where the defendant is both the tortfeasor and the health care provider for the injuries resulting from the tort. The District of Columbia Court of Appeals, in *Hardi v. Mezzanotte*, 818 A.2d 974, 985 (D.C. 2003), discussed and distinguished *Moorhead* because in *Hardi* the Medicare provider was not the tortfeasor:

"Since the [Pennsylvania Supreme Court in *Moorhead*] allowed plaintiff's damages for the amount actually paid to the medical facility, and the facility itself provided services in the greater amount, it is fair to say that the medical facility actually made plaintiff whole for the full amount of the claimed medical expenses. It was the tortfeasor's contract that accounted for this result, not the plaintiff's, as far as we can tell."

In a footnote, the *Hardi* court further stated:

"It is worth noting again here that in this jurisdiction, the collateral source rule is applicable when payment comes from a source wholly independent of the tortfeasor or when *plaintiff*'contract[s] for the prospect of double recovery.' [Citation omitted.] It does not appear that the facts in *Moorhead* would meet these tests." 818 A.2d at 985 n.5.

As these cases note, the Medicare scheme is not one where the beneficiary contracts for double recovery. Most notably, Medicare has a right of subrogation allowing it to seek recovery of amounts paid to a beneficiary. 42 U.S.C. § 1395y(b)(2)(B)(iii) (2000). Medicare's subrogation right includes the right to seek reimbursement from a beneficiary's settlement with a liability insurer or other third-party payer. 42 U.S.C. § 1395y(b)(2)(B). Additionally, 42 C.F.R. § 411.35 (2004) allows the Medicare provider to "collect or seek to collect, for the Medicare-covered services *from the beneficiary* or any entity" (emphasis added) those amounts paid by a workers compensation plan, a no fault insurer, or an employer health plan as the primary insurer. "If this amount exceeds the amount payable by Medicare (without regard to deductible or coinsurance), the provider or supplier may retain the third party payment in full without violating the terms of the provider agreement or conditions of assignment." 42 C.F.R. § 411.35(c)(1). Further, the provider, although it cannot assert a lien against liability insurance, may look to an insurer for primary payment where prompt

payment is expected. See 42 U.S.C. § 1395y(b)(2)(A)(ii); 42 C.F.R. § 411.50 (2004).

Although the provisions of 42 C.F.R. § 411.35 and 42 C.F.R. § 411.50 do not apply to the portion of the judgment at issue, which does not include the $83,000 against which Medicare does have a subrogation claim, these provisions and Medicare's right of subrogation against the award reflect Congress' attempt to strike a balance between protecting beneficiaries and saving money for the Medicare system. *Joiner*, 709 So. 2d at 1216-17. The legislative and regulatory scheme, although designed to assure a full recovery of the beneficiary's out-of-pocket expenses such as deductibles and coinsurance and to maximize any settlement, is not established to determine a plaintiff's measure of damages or the recoverability of damages. Rather, the scheme contemplates that the Medicare beneficiary and the health care provider should be made whole or nearly whole through any third-party payments.

Not only does this scheme demonstrate that the "charge" or credit amount should not be treated as a collateral source under the facts of this case where the defendant was the provider of the services, it also demonstrates a legislative intent which is consistent with the trial court's ruling and our determination that the ruling did not violate 42 U.S.C. § 1395cc(a)(1)(A)(i).

Thus, we conclude that under the facts of this case, specifically where the Medicare provider, Via Christi, is the defendant and also the health care provider of the services which form the basis of the economic damages claim, the trial court did not err in allowing a setoff or credit against the portion of the economic loss attributable to medical expenses in the amount of the Medicare write off, an amount not paid by the plaintiff, Medicare, or any third party, and which reflected a cost incurred by the defendant. The trial court's ruling is a correct application of Kansas law and is not prohibited by the Medicare limiting charge statute, 42 U.S.C. § 1395cc(a)(1)(A)(i).

Because we are affirming the trial court's ruling, we do not reach the issue on the cross-appeal of whether evidence of medical charges that are written off by a health care provider pursuant to a contract with Medicare is admissible at trial as evidence of eco-

nomic damages. Thus, we do not reach the broader issue of whether Medicare or a Medicare write off, when the services are provided by a health care provider that is not a defendant, is a collateral source. We recognize that this issue has a broader application than the narrow holding we reach today, which is limited to the relatively rare factual situation of a tortfeasor providing the posttort medical treatment which underlies the economic loss. However, given the nature of the trial court's ruling and the unique facts of this case, the broader issue is not before us and, therefore, we refrain from reaching it.

Affirmed.

GERNON, J., not participating.

ALLEGRUCCI, J., dissenting: I respectfully dissent from the result reached by the majority. I do so based on the reasoning expressed in the majority opinion in *Rose v. Via Christi Health System, Inc.*, 276 Kan. 539, 78 P.3d 798 (2003).

DAVIS, J., joins in the foregoing dissent.