NOT DESIGNATED FOR PUBLICATION

Nos. 117,320
117,321

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.M.D. and M.U.D.,
Minor Children.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed July 14, 2017.
Affirmed.

*Miranda B. Johnson*, of Caffey & Johnson, P.A., of Manhattan, for appellant.

*Bethany C. Fields*, deputy county attorney, and *Barry R. Wilkerson*, county attorney, for appellee.

Before GARDNER, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: M.D., the mother of A.M.D. and M.U.D., appeals the ruling of the
Riley County District Court finding her children to be in need of care. She contends the
evidence adduced at the hearing failed to establish sufficient legal grounds, including
physical and emotional abuse, to warrant the district court's conclusion. She also says the
district court violated her due process rights by allowing the State to add a ground for
adjudicating M.U.D. in need of care after the close of evidence. Under the narrow
circumstances of this case, we find no basis for upsetting the district court's determination
and, therefore, affirm the adjudication of A.M.D. and M.U.D. as children in need of care.

We provide additional factual and procedural history as necessary and take up
M.D.'s points after outlining some governing legal principles.

1

*Introductory Legal Principles and Procedural History*

Child in need of care proceedings originate with the State's *parens patriae* interest in protecting the safety and welfare of children within its jurisdiction. See K.S.A. 2016 Supp. 38-2201(a) (proceedings under Revised Kansas Code for Care of Children "deemed to be pursuant to the parental power of the state"); K.S.A. 2016 Supp. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"); *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) (recognizing *parens patriae* foundation for proceedings), *rev. denied* 289 Kan. 1278 (2010). They may culminate in the termination of parental rights if necessary for the wellbeing of the child, thus extinguishing a fundamental constitutional right of a person to raise his or her offspring. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (fundamental right); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (same); K.S.A. 2016 Supp. 38-2269 (grounds for terminating parental rights).

Here, we are concerned with the adjudication of A.M.D., a 10-year-old girl, and M.U.D., her 6 1/2-year-old brother, as children in need of care—a determination typically made early in proceedings under the Revised Kansas Code for Care of Children and usually followed by concerted efforts to reunify the family through detailed plans aimed at eliminating the deleterious conditions prompting the initial government intervention. A parent may appeal a judicial adjudication of his or her child as being in need of care, commonly known as a CINC determination. K.S.A. 2016 Supp. 38-2251.

In a CINC hearing, the district court must find by clear and convincing evidence that the child meets the statutory definition for being in need of care. K.S.A. 2016 Supp. 38-2250 ("The petitioner must prove by clear and convincing evidence that the child is a child in need of care."); *In re B.D.-Y.*, 286 Kan. at 698-99. That is a comparably demanding standard requiring all necessary facts be proved "'highly probable.'" See 286 Kan. at 696, 697-98. An appellate court reviewing a CINC adjudication must be

2

convinced, based on the complete evidentiary record viewed in favor of the State as the prevailing party, that a rational factfinder could have found that determination "highly probable, *i.e.*, [proved] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot reweigh evidence, redetermine the credibility of witnesses, or redecide factual disputes. 286 Kan. at 705. In other words, we must resolve any evidentiary conflicts in the State's favor and against M.D.

The Revised Kansas Code for Care of Children effectively defines "child in need of care" by providing 14 different ways a child may be found in need of care. K.S.A. 2016 Supp. 38-2202(d). Here, in November 2016, the Riley County Attorney filed separate petitions as to A.M.D. and M.U.D. The respective petitions alleged each of them to be in need of care because he or she: (1) is without adequate parental care, control, or subsistence; (2) is without the care or control necessary for the child's physical, mental, or emotional health; and (3) has been physically, mentally, or emotionally abused or neglected. See K.S.A. 2016 Supp. 38-2202(d)(1),(2), (3). A single statutory ground, if proved, is legally sufficient to support a CINC determination.

The district court held an evidentiary hearing on January 17, 2017. At the close of the evidence, the deputy county attorney moved to amend the petition regarding M.U.D. to add as a basis for adjudication that he resided with a sibling (A.M.D.) under 18 years of age who has been physically, mentally, or emotionally abused or neglected. See K.S.A. 2016 Supp. 38-2202(d)(11). The district court permitted the amendment over M.D.'s objection. The district court found A.M.D. to be in need of care based on the first and third grounds alleged in the petition and found M.U.D. to be in need of care based solely on the amended ground of his residency with an abused child. M.D. has appealed the CINC adjudications.

*Sufficiency of the Evidence*

The evidence at the adjudication hearing established that A.M.D. and M.U.D. lived with their mother and had for some time. The record shows their father had a separate residence, paid child support, and had a job requiring him to travel regularly. In October 2016, A.M.D.'s fourth grade teacher found a note in the child's desk ostensibly written to M.D. that stated, in part, "Stop snaching [*sic*] me up." and "I love my daddy more than you." The teacher took the first statement to be a reference to potentially abusive physical contact between M.D. and A.M.D. and asked the child about what she had written. A.M.D. told the teacher M.D. had been grabbing her by the hair and that she was scared. A.M.D. also said she wanted to live with her father. The teacher duly reported what she had learned from A.M.D., prompting a review by the Department for Children and Families.

In early November, the teacher saw that A.M.D. appeared to be crying and distraught at the start of the school day. The teacher overheard A.M.D. talking with J.D., a girl who lived near her and attended the same school. A.M.D. told J.D. that M.D. was angry with her because she had misplaced her phone. According to A.M.D., M.D. then called her names and hit her. A.M.D. also said she was afraid and believed M.D. was putting something bad in her food. The teacher accompanied A.M.D. and J.D. to the school social worker and the principal. One of the adults then called DCF and left a message. Without any response from the agency during the next several hours, one of the school employees contacted the Riley County Police Department.

At the hearing, Riley County Police Officer Calvin Sanders testified that he interviewed J.D. and M.U.D. J.D. said she had gone to A.M.D.'s apartment before school. J.D. said she heard both what sounded like slaps coming from another room where M.D. and A.M.D. were and a scream from A.M.D. J.D. then saw M.D. throw a book bag at A.M.D., striking her in the stomach and causing her to cry. The officer related that J.D.

saw M.D. take a belt, wrap it around her hand, and hit A.M.D. twice in the stomach and once in the arm with her closed fist. According to J.D., M.U.D. began crying during the incident. J.D. then suggested they needed to go to the bus stop. M.D. told them to hurry to catch the bus, and the children left the apartment.

Sanders testified that M.U.D. told him that M.D. had given A.M.D. a "whoopin'" with a belt. But Sanders indicated M.U.D. was unclear about whether he actually saw M.D. hit A.M.D. Sanders also testified that he had some general information that M.U.D. had learning disabilities and had "got[ten] the idea that he had limited capabilities."

Riley County Police Department Detective Julia Goggins testified about her interview of A.M.D. The child related that M.D. had punched her several times in the shoulder and abdomen. A.M.D. also said M.D. had thrown a binder at her, striking her in the stomach and causing her to want to vomit. A.M.D. related that she had received "whoopin's" from M.D. in the past—usually her mother used her hands but once before had used a belt. According to Goggins, A.M.D. believed M.D. was trying to poison her because M.D. had wanted a boy rather than a girl. A.M.D. told Goggins she would like to live with her father.

M.D.'s cousin testified that she saw the children on the way to the school bus the morning of the central incident and A.M.D. did not appear to be upset. The cousin also said A.M.D. had never said anything to her about problems with M.D. or being fearful that M.D. wanted to harm her. A.M.D. and M.U.D.'s father testified that A.M.D. had expressed a desire to live with him but had never indicated M.D. had abused her.

As we have suggested in recounting the hearing evidence, A.M.D., M.U.D., and J.D. did not testify, although any of the parties could have called one or more of the children as witnesses. See K.S.A. 2016 Supp. 38-2249(d) (district court may regulate manner in which child less than 13 years old provides testimony in any hearing).

5

In its ruling, the district court acknowledged A.M.D. could have fabricated her claims about M.D. in an effort to live with her father. But the district court discounted that possibility, especially in light of J.D.'s corroboration of the incident in which M.D. repeatedly struck A.M.D. with the belt and threw an object, either a binder or a book bag, at her. The district court noted that J.D. had nothing to gain by corroborating a false account of the interaction between A.M.D. and M.D. Had the district court found the evidence not credible, it would have dismissed the proceedings. See K.S.A. 2016 Supp. 38-2251(a). We, then, are bound by the district court's determination effectively finding A.M.D.'s account to be credible. And we must view the record evidence in a light favoring the State.

Given those standards, we find sufficient evidence to support the adjudication of A.M.D. and M.U.D. as children in need of care. In particular, the evidence supports a determination that A.M.D. had been physically and mentally or emotionally abused or neglected, thereby warranting a CINC adjudication as provided in K.S.A. 2016 Supp. 38-2202(d)(3). Neglect under the Act entails "acts or omissions by a parent . . . resulting in harm to a child, or presenting a likelihood of harm." K.S.A. 2016 Supp. 38-2202(t). Harm is statutorily defined to include "physical or psychological injury or damage." K.S.A. 2016 Supp. 38-2202(l).

The core incident, as described in the evidence as we must view it, depicts M.D.'s physical assault of A.M.D. in a manner that could not be justified as punishment or discipline. It was physically harmful in that J.D. heard A.M.D. scream at one point and A.M.D. felt as if she might vomit after being hit with the book bag or binder. Moreover, the teacher's description of A.M.D.'s appearance at school that morning was fully consistent with emotional harm—the child was visibly upset. In short, M.D.'s treatment of A.M.D. that morning entailed conduct that presented at least the likelihood of physical or emotional harm.

6

The evidence also indicates the incident was part of a course of conduct. A.M.D. said she had been struck on other occasions, including one other time when M.D. used a belt. The note the teacher found in October tended to corroborate multiple instances that A.M.D. considered physically abusive, a point the district court also mentioned. The overall circumstances appear to have been emotionally or psychologically debilitating to A.M.D., as evidenced by her belief her mother was trying to poison or otherwise seriously harm her. Nothing in the record factually supports such conduct by M.D., and we don't mean to suggest otherwise. But A.M.D.'s belief to that effect does underscore the adverse psychological impact M.D.'s actions had on the child.

All of that is sufficient to support the district court's adjudication of A.M.D by the requisite legal standard. In other words, there was enough in the record to permit a reasonable person to conclude by clear and convincing evidence that A.M.D. was a child in need of care.

That conclusion necessarily supports the district court's adjudication of M.U.D., as well. M.U.D. was found to be in need of care specifically because he lived with another child who had been abused or neglected. There was no dispute A.M.D. and M.U.D. lived together with M.D. So if A.M.D. were properly adjudicated a CINC—and we have found the record supports that determination—then M.U.D. had to be, too, even if he suffered no harm.

*Amendment of Petition*

M.D. contends the district court had no authority under the Revised Kansas Code for Care of Children to permit the State to amend the petition for adjudication of M.U.D. as a child in need of care. She alternatively contends the amendment, if otherwise permissible, occurred so late in the adjudication hearing as to violate her due process

7

rights protected in the Fourteenth Amendment to the United States Constitution. We take up those contentions in order.

Although the Revised Kansas Code for Care of Children includes a number of statutes establishing procedures governing CINC cases, it is silent about amendments to petitions for adjudication and other substantive filings, such as motions to terminate parental rights. That is, the Code neither expressly permits amendments nor expressly prohibits them. We are disinclined to find prohibition in that silence, as M.D. would have us construe the procedural scheme. As we have indicated, the overarching purpose of the Code is to foster the wellbeing of the State's children, and its provisions are to be "liberally construed to carry out" that policy. K.S.A. 2016 Supp. 38-2201(b). The legislature, likewise, has mandated that proceedings under the Code be resolved "without unnecessary delay." K.S.A. 2016 Supp. 38-2201(b)(4).

A categorical no-amendment rule would conflict with those directives. By their nature, CINC proceedings generally do not involve static or fixed circumstances. They concern dynamic familial relationships that may be significantly shaped and reshaped during the judicial process as the result of social service efforts to reintegrate family members. Similarly, additional information about those relationships may come to light during the adjudicatory process. The district court and the parties necessarily must be afforded reasonable latitude to adjust the formal filings to take account of those changes. A rule precluding amendments would force the State to begin anew if developments called for tailoring of a petition for adjudication. The legislature plainly did not intend that sort of formalism to delay the vital mission of protecting children and whenever possible preserving family relationships. We, therefore, conclude the State had the right to request amendments to the petitions for adjudication filed in this case, and the district court had the concomitant authority to allow amendments.

The parties suggest incorporating the procedures for amending charging instruments in criminal cases, as set out in K.S.A. 22-3201(e). We are disinclined to look to the criminal code for guidance. First, the legislature has recognized proceedings under the Revised Kansas Code for Care of Children to be civil in nature. K.S.A. 2016 Supp. 38-2201(a). That alone is a good reason to search elsewhere.

Second, in considering a predecessor to the Revised Kansas Code for Care of Children, the Kansas Supreme Court found the earlier statutory scheme included a complete set of procedural rules obviating the need to transplant some or all of the Code of Civil Procedure. *In re Woodward*, 231 Kan. 544, 550, 646 P.2d 1105 (1982). But the court, nonetheless, recognized that the Code of Civil Procedure could provide useful guidance on how the Code for Care of Children ought to be applied, especially in assessing the sufficiency of constitutional due process afforded litigants. 231 Kan. at 550. See also *In re Adoption of M.L.K.*, No. 113,320, 2016 WL 937849, at *6 (Kan. App. 2016) (unpublished opinion).

We suppose, then, that K.S.A. 2016 Supp. 60-215, governing amendments to petitions and other pleadings in Chapter 60 actions, provides a useful reference point. In gleaning what we can from that statute, we put aside the technical requirements outlined there and express no opinion on relation-back of amendments—something that is not an issue in this case and would not commonly arise in CINC proceedings. At its core, K.S.A. 2016 Supp. 60-215 affords the district court the discretion to allow amendments to the pleadings "when justice so requires." K.S.A. 2016 Supp. 60-215(a)(2). We think that basic principle ought to govern amendments to petitions and other substantive filings under the Revised Kansas Code for Care of Children. A proposed amendment typically ought to be brought to the attention of the district court and the other parties in written form with a reasonable time for responses, imposing a degree of contemplation and clarity lacking in oral requests made without advance notice. But a district court has the discretion to consider impromptu requests.

Apart from the mechanics of submitting a requested amendment, the district court must insure that the constitutional due process rights of all parties have been preserved. Constitutionally protected procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). The Kansas Supreme Court similarly defines due process rights. *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009); *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409-10, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002). The nature and extent of the due process protections must be calibrated to the significance of the protected interest. *Mathews*, 424 U.S. at 349. The more important the interest at stake, the more elaborate the protections. See *Goldberg v. Kelly*, 397 U.S. 254, 262-63, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). Essentially, due process requires fair notice.

Here, we are dealing with a fundamental liberty interest parents have in their relationship with their children, so the procedural due process requirements have to be stringent. The State's heightened evidentiary burden is illustrative of the stringent due process protections that attach to CINC actions. See *Santosky*, 455 U.S. at 768-770. Accordingly, a late amendment from the State made without advance notice commonly would not afford fair notice, especially if the proposed amendment expanded the substantive issues in an adjudication or termination hearing.

But an argument could be made that given the specific amendment at issue here, M.D. had constitutionally fair or sufficient notice of the State's amendment to the petition for the adjudication of M.U.D. As we have already discussed, the amendment sought to have M.U.D. declared a CINC because he lived with A.M.D., who the State alleged had been physically, mentally, or emotionally abused or neglected, thereby making her a CINC. M.D. received ample advance notice of that ground as to A.M.D. and, therefore, had a constitutionally sufficient opportunity to respond regarding A.M.D. In turn, M.U.D.'s status as a CINC based on the amendment rose or fell entirely on A.M.D.'s status. M.D. has not suggested she would have presented more or different evidence to counter the amended ground for finding M.U.D. a CINC. The suggestion would have been untenable.

Nonetheless, we assume without deciding that the district court deprived M.D. of constitutional due process in allowing the State's late amendment as to M.U.D. and, therefore, committed error. The presumed error would be subject to review for harmlessness. See *In re Henderson*, 306 Kan. ___, 392 P.3d 56, 66-67 (2017); *United States v. Zavesky*, 839 F.3d 688, 694-95 (8th Cir. 2016). In other words, to obtain relief, M.D. would have to show her substantive right to a fair hearing was prejudiced. Because the amendment as to M.U.D. did not alter the controlling issue—A.M.D.'s status as a CINC—or affect the scope of the relevant evidence, any error was harmless.

The error also would have been harmless because M.U.D. properly could have been adjudicated a CINC as provided in K.S.A. 2016 Supp. 38-2202(d)(3)—one of the grounds the State did allege in its petition. The evidence, as found by the district court, showed that M.D. had physically assaulted A.M.D. in M.U.D.'s presence, causing him to cry. If a parent abuses one child in the presence of a second child who is cognizant of that improper behavior, the second child may foreseeably suffer mental or emotional trauma as a result. In turn, the parent would, at the very least, have neglectfully exposed the second child to the likelihood of emotional harm. That would render the second child a

CINC under K.S.A. 2016 Supp. 38-2202(d)(3). M.D.'s conduct put M.U.D. in that position.

The district court could have found M.U.D. in need of care on that basis and would have reached a correct result for that reason even in the absence of the State's amendment. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005) (district court may be affirmed if it reaches the right result for the wrong reason). Such an independent legal ground for the result renders harmless any due process error in allowing the late amendment.[*]

[*]The amended ground under K.S.A. 2016 Supp. 38-2202(d)(11) is somewhat broader than the ground in K.S.A. 2016 Supp. 38-2202(d)(3) in the sense that the subject child need not be aware of the maltreatment of another child in the household to be adjudicated a CINC. For example, K.S.A. 2016 Supp. 38-2202(d)(11) would permit the district court to adjudicate a 6-month-old baby to be a CINC because the parents had abused or neglected an older sibling, even though the baby had not been mistreated and would not have been aware of the mistreatment of the other child.

Having fully considered the issues M.D. has raised in light of the record, we find no basis to set aside the district court's adjudication of A.M.D. and M.U.D. as children in need of care.

Affirmed.