(207 P.3d 265)
No. 99,503

TAMMY J. ADAMSON, *Appellant/Cross-appellee,* v.
KODY J. BICKNELL, *Appellee/Cross-appellant.*
Petition for review granted March 31, 2010.

Opinion filed
May 15, 2009.

*Patrick C. Smith* and *Kurtis I. Loy,* of Loy Law Firm, L.L.C., of Pittsburg, and *Patrick C. Smith,* of Pittsburg, for appellant/cross-appellee.

*Kevin M. McMaster* and *Jennifer M. Hill*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee/cross-appellant.

Before MCANANY, P.J., PIERRON and STANDRIDGE, JJ.

STANDRIDGE, J.: Tammy J. Adamson appeals on a number of issues arising out of her personal injury suit against Kody J. Bicknell. Bicknell filed a cross-appeal with regard to a pretrial discovery determination made by the district court. For the reasons stated below, we reverse the district court's decision to deny Adamson's motion to amend petition to include punitive damages and accordingly remand for a new trial to include a claim for punitive damages. Moreover, we reverse the district court's decision to exclude evidence of medical expenses in the amount of $2,823.85 and $6,097.30, medical expenses which ultimately were written off by the medical provider as a bad debt and a commercial adjustment, respectively.

## *Facts*

On July 11, 2003, Adamson was stopped in traffic at a railroad crossing on Highway 69 in Crawford County. Adamson noticed a black truck rapidly approaching her from behind and, anticipating a collision, tried to move her vehicle out of the way. This attempt was unsuccessful and the truck, driven by Bicknell, impacted Adamson's vehicle and forced her to collide into the rear of another vehicle stopped in front of her.

Although Adamson told those at the scene of the accident that she was all right, she reported to the emergency room later that day and complained of a stiff neck. Bicknell and his passenger were transported to the hospital for their injuries.

Prior to this transport, however, Kansas Highway Patrolman Keith Scott entered Bicknell's vehicle to search for registration and insurance documentation. According to his deposition, Scott smelled both burnt and raw marijuana in Bicknell's vehicle. While checking the vehicle's center console, Scott found marijuana and a pipe. Behind the driver's seat, Scott also found a nylon bag containing what he believed to be marijuana. After informing the Kansas Bureau of Investigation of his discovery, Scott had the vehicle towed to the Pittsburg Police Department to be searched. The

search revealed 19 plastic baggies containing marijuana inside the nylon bag, multiple other bags containing either marijuana or residue, pipes, and a digital scale with marijuana residue. Bicknell was arrested for possession of depressants with intent to distribute. It is unclear from the record whether Bicknell was subsequently prosecuted for the drug charges, but it does appear that he entered into a diversion agreement for driving under the influence and participated in a drug treatment program.

Adamson ultimately brought a negligence suit against Bicknell. Prior to trial, the parties filed a number of motions relevant to this appeal: (1) Bicknell's motion for an order of protection; (2) Adamson's motion to amend her petition to add a claim for punitive damages; and (3) Bicknell's motion in limine requesting the exclusion of any evidence of medical expense in excess of that reimbursed by Medicaid.

In his motion for an order of protection, Bicknell petitioned the court for "an order protecting this Defendant from being deposed by one of Plaintiff's two attorneys." The motion alleged that one of Adamson's attorneys, Patrick Smith, was "personally involved in a domestic dispute" with Bicknell's relatives that had "escalated to reported threats of violence and financial ruin" and that allowing Smith to depose Bicknell would cause Bicknell annoyance, embarrassment, oppression, and undue burden.

Although the motion for protective order was heard on April 25, 2006, the district court did not rule on the motion until after the case was over. The hearing transcript is not included in the record on appeal, but Bicknell asserts that the district court verbally admonished Smith to " 'be cautious' " in deposing Bicknell. After this appeal was docketed, Bicknell filed a motion requesting that the district court enter a written order on his motion for a protective order. The district court subsequently issued an order denying the request for protection.

In her motion to amend, Adamson asserted she was entitled to supplement her petition to add a claim for punitive damages because Bicknell was impaired at the time of the accident. In support of the motion, Adamson asserted Bicknell admitted at his deposition to smoking marijuana approximately 4 hours before the acci-

dent and, when asked whether he was impaired at that time, stated, "At the time I definitely would have said no, that it did not impair me. But now looking back at it, and not doing that stuff for a long time, I'm sure it did have some affect [*sic*] with why I got in the wreck." In addition, Adamson referenced Trooper Scott's report of the accident, which noted that an illegal drug was present and contributed to the crash. Finally, Adamson maintained Bicknell submitted to a urinalysis following the accident, within which he tested positive for marijuana and cocaine.

In opposing Adamson's request to pursue punitive damages against him, Bicknell asserted there was no evidence he was impaired at the time of the accident and there was no evidence of a causal relationship between his alleged impairment and the accident. As a result, Bicknell argued there was little likelihood a jury would find clear and convincing evidence that punitive damages were warranted.

The district court was persuaded by Bicknell's argument and ultimately denied the motion to amend. The court found it "unlikely that [Adamson] can prove by clear and convincing evidence that [Bicknell] was under the influence of drugs to such a degree that [Bicknell's] operation of his vehicle at the time in question constituted willful or wanton conduct." Adamson filed a motion to reconsider and, in support, submitted the affidavit of a witness who observed Bicknell's driving just prior to the crash. The witness observed Bicknell speed and pass erratically in a no passing zone. At the time of this observation, the witness expressed a belief that Bicknell would be involved in an accident. Notwithstanding this new evidence, the district court denied the motion for reconsideration on grounds that, again, Adamson failed to show intoxication or causation.

In his motion in limine, Bicknell requested the exclusion of any evidence of medical expense in excess of that reimbursed by Medicaid. Pursuant to a request by the district court that is not in the record on appeal, the parties filed briefs on the issue. The parties agreed that, under *Bates v. Hogg*, 22 Kan. App. 2d 702, 921 P.2d 249, *rev. denied* 260 Kan. 991 (1996), *superseded on other grounds by statute as stated in Frans v. Gausman*, 27 Kan. App. 2d 518,

527, 6 P.3d 432, *rev. denied* 270 Kan. 897 (2000), expenses written off because of Medicaid reimbursement are not admissible. Adamson argued that this exclusion should not apply to other types of write-offs taken by providers in this case, including alleged write-offs for bad debt, commercial adjustment, or in-network services. Conversely, Bicknell argued that existing law allowed a plaintiff to recover only costs that were reimbursed by Medicaid and that any evidence of other expenses should be excluded.

The district court ultimately permitted introduction of expenses paid by Medicaid, personal injury protection (PIP), and Adamson's out-of-pocket expenses. However, the court excluded all other hospital and insurance write-offs because "at all times [Adamson] had Medicaid available to her."

A jury trial was held on the sole issue of damages. Bicknell's primary defense was that many of Adamson's injuries and consequent medical expenses were not caused by the accident. Bicknell's expert physician testified that, in his opinion, Adamson's carpal tunnel syndrome, ulnar nerve entrapment, tennis elbow, and shoulder injury were not caused by the car accident. The testimony of Adamson's expert physician, given in a video deposition, is not included in the record on appeal.

During deliberations, the jury presented two questions to the district court. The first question concerned the evidence of Adamson's medical bills and asked whether Adamson's medical expenses were out-of-pocket. After conferring with both parties' counsel, the court answered:

"The parties have stipulated that the medical expenses represented by Exhibit 7 are reasonable charges for the medical services provided to the plaintiff, therefore, under the evidence of the case there is no dispute that the reasonable charges for medical procedures to the plaintiff are represented by Exhibit 7. The defendant does dispute the necessity of those expenses being caused by the accident. Accordingly, if you find the medical services claimed by the plaintiff to be incurred as a result of the automobile accident, you should award the amounts shown on Exhibit 7. If you find that not all the services were incurred as a result of the automobile accident, you have the discretion to award a lesser amount."

The second question asked whether "this decision [will] prevent or incur [*sic*] seeking further damage." Bicknell pointed out that

the question did not refer to future lawsuits, but rather "further damage[s]" and that the court previously had granted Bicknell judgment as a matter of law on the issues of future medical expenses and future lost wages. The court apparently told the jury that it was not to consider additional damages that were not in front of them. The actual answer given to the jury by the court is not included in the record on appeal.

Before the court answered the second question, Adamson moved for a mistrial. In support of mistrial, Adamson claimed statements made by Bicknell's counsel during closing argument were prejudicial and made in "an attempt to elicit or extract sympathy on behalf of the defendant." More specifically, Adamson argued Bicknell's counsel essentially conceded that Bicknell "wasn't paying attention. . . . And from that day forward we would submit the evidence shows that [Bicknell] has been trying to do what is right," and that "consistent with [Bicknell] taking responsibility from the beginning, he and I or we or me on behalf of him, have gone through the records that we have." Adamson also claimed that the presence of Bicknell's family members at trial, apparently a prominent family in the area, was prejudicial. Finally, Adamson claimed the questions presented by the jury indicated that there was "jury misconduct in considering issues outside of the evidence."

The district court denied the motion, noting that the comments of Bicknell's counsel were not evidence, that the court had sustained Adamson's two objections to the comments and instructed counsel to argue the evidence only, and that the comments were harmless. The court further noted that Adamson's counsel had made comments of a similar nature to which it sustained objection. On the issue of the presence of Bicknell's family, the court found that citizens have a right to attend trial, regardless of their relationship to the parties. Regarding the jury questions, the court stated that it had, and would, instruct the jury to limit its consideration to appropriate issues.

The jury found that Adamson sustained damages of $11,100 in medical expenses, $7,500 in economic loss, and $5,000 in present noneconomic loss, for a total award of $23,600.

Adamson moved for a new trial, alleging a number of errors. Adamson first claimed that the verdict was tainted by juror misconduct. In support of this contention, Adamson offered the affidavit of juror B.S., who stated that the jury considered the existence of insurance to pay medical expenses and whether an award to Adamson would "[open] the [doors to] further litigation." Adamson argued the court must assume these improper considerations influenced the jury's verdict, thus making it invalid. Adamson next argued that the verdict was influenced by the jurors' passion and prejudice. In support of this contention, Adamson again cited B.S.'s affidavit, in which B.S. stated that three jurors felt that Adamson should get nothing for medical expenses. Adamson claims that no reasonable juror would believe that she was due no medical expenses, so such a belief must have been premised on passion or prejudice. Next, Adamson argued the district court erred in denying her motion to include a claim for punitive damages, in excluding evidence of medical expenses charged, and denying her motion for mistrial based on allegedly prejudicial conduct by Bicknell's counsel. Adamson finally argued that the jury's verdict should be set aside as inadequate and for additur.

The district court denied the motion for new trial. On the issues of juror misconduct and passion and prejudice, the court found that neither the jury's questions nor B.S.'s affidavit established misconduct because there was no evidence that, once instructed, the jury made improper considerations. The court further found that the conduct of Bicknell's counsel was not prejudicial. On the issue of punitive damages, the court adopted the reasoning in support of its initial decision to deny Adamson's motion to amend. Regarding Adamson's claim that the court erroneously excluded evidence of medical expenses, the court held that, even if the expenses at issue were not reimbursed by Medicaid, there was no evidence that they were ineligible for Medicaid payment and thus they were properly excluded. Finally, the district court upheld the jury's damage verdict, finding that it was supported by the evidence.

Adamson appeals, arguing the district court erred (1) in denying her motion to amend her petition to include punitive damages; (2) in denying her motion for a new trial based upon the erroneous

exclusion of medical expense evidence; and (3) in denying her motion for a new trial based upon juror misconduct and the influence of passion or prejudice on the jury's verdict. Bicknell cross-appeals, claiming the district court erred in denying his motion for a protective order preventing Adamson's counsel from deposing him.

## Analysis

### I. Did The District Court Err In Denying Adamson's Motion To Amend Her Petition To Include A Claim For Punitive Damages?

A district court's decision not to allow an amendment for punitive damages is reviewed for an abuse of discretion. *Lindsey v. Miami County National Bank,* 267 Kan. 685, 689, 984 P.2d 719 (1999). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *In re Marriage of Bradley,* 282 Kan. 1, 7, 137 P.3d 1030 (2006).

Under K.S.A. 60-3703, a plaintiff may only make a claim for punitive damages upon a motion to amend the petition to include such a claim. To that end, the district court may allow an amendment to include punitive damages if, based on the evidence and arguments in support thereof, the court finds "that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." K.S.A. 60-3703. To prevail on a claim of punitive damages, a plaintiff has the burden to prove "by clear and convincing evidence . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60-3702(c).

The district court, viewing the evidence in the light most favorable to the plaintiff, must consider the plaintiff's burden of proof as cited above when determining whether to grant the amendment. *Fusaro v. First Family Mtg. Corp.,* 257 Kan. 794, 801-02, 897 P.2d 123 (1995). As stated in *Fusaro,* the district court "shall allow the amendment" when "the evidence is of sufficient caliber and quality to allow a rational factfinder to find that the defendant acted towards the plaintiff with willful conduct, wanton conduct, fraud, or

malice." The *Fusaro* court went on to hold that such an "amendment will be allowed when plaintiff has established that there is a probability that plaintiff will prevail on a punitive claim." 257 Kan. at 802.

In a written journal entry denying Adamson the right to present a claim of punitive damages to the jury, the court found there was

"no clear and convincing evidence by which a rational fact finder could conclude that defendant was smoking marijuana (or cocaine) while he was operating his vehicle or that defendant had smoked marijuana less than four hours before the accident, or that the marijuana smoked four hours prior to the accident was sufficient to affect defendant's ability to safely operate his vehicle."

Put another way, the district court determined that Adamson failed to establish the precise amount of marijuana and cocaine in Bicknell's system at the time of the accident and that, without evidence to quantify the presence of these drugs, it was unlikely Adamson would be able to prove by clear and convincing evidence at trial that Bicknell acted wantonly. See K.S.A. 60-3702(c); K.S.A. 60-3703. We disagree with the court's determination in this regard.

"Wanton conduct is an act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act." *Reeves v. Carlson*, 266 Kan. 310, 313, 969 P.2d 252 (1998). "Wantonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence." 266 Kan. at 314.

As a preliminary matter, we do not believe that a lack of evidence regarding intoxication beyond the legal limit and/or the precise quantity of marijuana and cocaine in Bicknell's system at the time of the accident is fatal to Adamson's claim that Bicknell was completely indifferent to the probable consequences of his actions. Wanton conduct is not premised on the existence of a minimum level of intoxication or quantity of drugs in the system. In fact, a finding that the drugs ingested by Bicknell did or did not cause Bicknell to crash into Adamson's vehicle is immaterial to our analysis of whether Bicknell engaged in wanton behavior. The "wanton conduct" giving rise to the claim for punitive damages "was not the collision, but [Bicknell's] choice to drive under circumstances that would likely or probably result in a collision." See *Reeves*, 266 Kan.

at 314-15 ("Wantonness refers to the mental attitude of the wrong-doer rather than a particular act of negligence.").

We find the evidence presented here was "of sufficient caliber and quality to allow a rational factfinder to find" that Bicknell reck-lessly disregarded the likely result of his conduct. See *Fusaro*, 257 Kan. at 802. In other words, we find from the evidence presented here " 'that there [was] a probability . . . that plaintiff [would have] prevail[ed] on [a punitive] claim.' " 257 Kan. at 802. Bicknell admitted to smoking marijuana approximately 4 hours before the accident. Moreover, Bicknell submitted to a urinalysis following the accident and tested positive for marijuana and cocaine. Al-though part of a diversion agreement in a separate case, Bicknell admitted to driving under the influence at the time of the accident. In his deposition, Bicknell acknowledged that marijuana played a role in the accident. There simply is no dispute here that Bicknell was under the influence of drugs when he got behind the wheel of his car, regardless of the extent to which he may have been impaired.

Presented with evidence that Bicknell willfully drove a vehicle under the influence of drugs, regardless of the level of impairment, we believe there was a probability that a jury would have found by clear and convincing evidence that Bicknell evinced that degree of indifference to the rights of others which may justly be character-ized as reckless disregard. Given the evidence presented, no rea-sonable person could find otherwise. Accordingly, we find the dis-trict court abused its discretion in failing to submit the issue of punitive damages to the jury for a determination on the merits.

## II. Did The District Court Err In Excluding Evidence Of Medical Expenses That Were Written Off By Medical Pro-viders?

Adamson maintains the district court improperly excluded evi-dence of medical expenses that were written off by medical pro-viders for reasons unrelated to Medicaid reimbursement. Gener-ally, the admission or exclusion of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's decision to exclude evidence is abuse of

discretion. *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 975, 59 P.3d 325 (2002). With that said, the adequacy of the legal basis upon which the district court relied in coming to such a decision is reviewed de novo. *Miller v. Glacier Development Co.*, 284 Kan. 476, 491-92, 161 P.3d 730 (2007).

The admission into evidence of expenses that have been paid by a third party is governed by the common-law collateral source rule. The rule generally dictates that

" 'benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.' [Citation omitted.]

" ' "The collateral source rule permits an injured party to recover full compensatory damages from a tortfeasor irrespective of the payment of any element of those damages by a source independent of the tortfeasor." ' [Citation omitted.]" *Bates*, 22 Kan. App. 2d at 705.

In *Bates*, this court created an exception to the collateral source rule for write-offs made by providers pursuant to a reimbursement agreement with Medicaid. 22 Kan. App. 2d at 705. The court reasoned that because a provider is statutorily prohibited from charging a patient for the difference between the provider's customary charge for care and the amount reimbursed by Medicaid, " '[i]t would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical services from a tortfeasor and pocket the windfall.' [Citation omitted.]" 22 Kan. App. 2d at 706. Under *Bates* therefore, any evidence of medical expenses written off by a provider because of Medicaid reimbursement must be excluded from trial.

The Kansas Supreme Court next considered the application of the collateral source rule as it applied to medical write-offs in *Rose v. Via Christi Health Systems, Inc.*, 276 Kan. 539, 551, 78 P.3d 798 (2003) (*Rose I*). *Rose I* was a medical malpractice case in which the defendant health care provider had written off certain expenses pursuant to a reimbursement agreement with Medicare. Finding that the collateral source rule applied, the district allowed the plaintiff to present evidence of these written-off expenses. The jury returned a verdict for the plaintiff, and the defendant filed a motion

to offset the award by the medical expenses it wrote off. The district court granted the motion to offset, which the plaintiff appealed. The provider cross-appealed the district court's ruling allowing evidence of the write-offs in the first place. On appeal, the defendant provider claimed that *Bates* should apply and that evidence of the write-offs should have been excluded, while the plaintiff argued that Medicare should be distinguished from Medicaid and treated like private insurance (and thus subject to the collateral source rule) because "Medicare benefits are purchased by payroll deductions and Medicaid benefits are free to all who qualify." 276 Kan. at 545.

After reviewing national case law, the court agreed with the plaintiff/appellant. 276 Kan. at 551. The majority was guided in this decision by the public policy rationale that the tortfeasor "should bear the full liability of his or her tortious actions without regard to the injured parties' method of financing his or her treatment" and that any windfall should inure to the benefit of the injured party. 276 Kan. at 551. The court held that Medicare should be treated as private insurance and that the collateral source rule should apply to Medicare payments. 276 Kan. at 551. The court thus implicitly limited *Bates* to exclude only those provider write-offs made pursuant to Medicaid reimbursement.

The Supreme Court granted a motion to rehear *Rose*. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 113 P.3d 241 (2005) (*Rose II*). In *Rose II*, the Supreme Court applied the collateral source rule to affirm the trial court's decision to grant an offset to the defendant since the setoff or credit was not provided by a collateral source but, rather, from the tortfeasor itself. The court limited its holding to the specific facts of the case before it in which the Medicare provider "is the defendant and also the health care provider of the services which form the basis of the economic damages claim." 279 Kan. at 533. In so holding, the court expressly refrained from reaching "the broader issue of whether Medicare or a Medicare write off, when the services are provided by a health care provider that is not a defendant, is a collateral source." 279 Kan. at 534.

In *Rose I*, our Supreme Court permitted the admission of evidence of medical expenses written off by a medical provider pursuant to a Medicare contract. 276 Kan. at 551. In *Rose II*, the court expressly avoided the Medicare/Medicaid distinction in applying the collateral source rule to exclude evidence of medical expenses for services rendered, but written off, by the tortfeasor. 279 Kan. at 533-34. Thus, there presently is no controlling law in Kansas that excludes evidence of medical expenses that are written off by medical providers other than in instances in which the expense is paid by Medicaid (*Bates*) or in instances in which the provider is the claimed tortfeasor (*Rose II*).

Adamson maintains the district court improperly excluded the following medical expenses based on an erroneous factual finding by the court that they were written off by the medical provider solely in relation to Medicaid reimbursement: a $3,879.65 "in-network" write-off, a $2,823.85 "bad debt" write-off, and a $6,097.30 "commercial adjustment" write-off. Based on the applicable law as set forth in *Bates* that evidence of medical expenses written off pursuant to Medicaid requirements must be excluded from evidence, the definitive issue on appeal is whether the district court abused its discretion in deciding that the write-offs in dispute were made pursuant to Medicaid requirements.

We begin our analysis by reviewing the evidence presented to the district court on this issue. Attached to her trial brief, Adamson submitted to the district court a document dated July 12, 2007, reflecting the current status of her account from Doctors Specialty Hospital. We find it helpful to summarize the relevant portions of this statement. In so doing, we have (1) underlined the payor as designated by the medical provider and (2) italicized those write-offs Adamson contends are unrelated to Medicaid requirements.

Designated Payor: MEDICAID

| | | |
|---|---|---|
| 01/17/05 | Original Balance | 19,292.59 |
| 02/04/05 | Medicaid Payment | -1,085.81 |
| 02/04/05 | Medicaid Adjustment | -14,327.13 |
| *10/31/06* | *In-Network Adjustment* | *-3,879.65* |
| Current Balance: | | .00 |

Designated Payor: MEDICAID

| 05/24/04 | Original Balance | 3,292.69 |
|---|---|---|
| 07/06/04 | Medicaid Payment | -297.00 |
| 07/06/04 | Medicaid Adjustment | -2,955.69 |
| Current Balance: | | 40.00 |

Designated Payor: SELF-PAY

| 01/12/04 | Original Balance | 2,823.85 |
|---|---|---|
| 08/20/04 | Bad Debt Write-off | -3.00 |
| 09/01/04 | Self-Pay | -3.00 |
| 09/10/04 | Bad Debt Write-off | 3.00 |
| *00/00/00* | *Write-off* [1] | *-2,823.85* |
| Current Balance: | | .00 |

Designated Payor: HORACE MANN INSURANCE

| 11/11/03 | Original Balance | 10,437.30 |
|---|---|---|
| 02/02/04 | Commercial PIP | -4,340.00 |
| *02/02/04* | *Commercial Adjustment* | *-6,097.30* |
| Current Balance: | | .00 |

A review of the record reveals no additional evidence was submitted to the district court regarding whether the three write-offs in dispute were related to Medicaid requirements. Thus, the district court's finding (that the medical provider write-offs were related to Medicaid reimbursement) had to have been based on the statement summarized above. We find the evidence does not support the court's decision in this regard.

As a preliminary matter, the "Self-Pay" designation for medical expenses incurred by Adamson on January 12, 2004, indicates that the designated payor is not Medicaid, but Adamson herself. Similarly, the "Horace Mann Insurance" designation for medical expenses incurred by Adamson on November 11, 2003, indicates that

---

[1] Although the statement identifies the bad debt write-off as $3.00, we deem this to be an accounting error based on arguments set forth by Adamson in her trial brief, which are supported by the fact that the original balance for this service was $2,823.85 and the current balance is $0. Accordingly, we have included an undated bad debt write-off for the correct amount of $2,823.85.

the designated payor was not Medicaid, but an insurance company providing personal injury protection (PIP). There simply is no evidence to support a finding that the $2,823.85 bad debt write-off or the $6,097.30 commercial adjustment write-offs made by the medical provider were related to Medicaid reimbursement. Given the complete lack of evidence linking these write-offs to Medicaid, no reasonable person could find otherwise. Given no other controlling law in Kansas excluding them from the scope of the collateral source rule, we find the district court abused its discretion in excluding evidence of these particular write-offs.

Alternatively, the "Medicaid" designation for medical expenses incurred by Adamson on January 17, 2005, indicates that the designated payor was Medicaid. In fact, the statement indicates that the provider received a $1,085.81 payment from Medicaid on February 4, 2005, and, on that same day, the provider wrote off $14,327.13 using the designation "Medicaid Adjustment." Almost 2 years after the $14,327.13 Medicaid write-off, the provider wrote-off an additional $3,879.65, this time designating the write-off as an "In-Network Adjustment." There is no further explanation of this adjustment in the record. Although the designation contains no reference to Medicaid and there is no indication that this amount was billed to Medicaid or that Medicaid refused to pay the bill, we find sufficient evidence to support a finding that the adjustment was related to Medicaid reimbursement. More specifically, the statement indicates that $19,292.59 in medical expenses were incurred by Adamson for care received on January 17, 2005. Given the provider received a $1,085.81 payment from Medicaid on February 4, 2005, with regard to this care, it is reasonable to conclude that Medicaid, as the designated payor for the services provided on this day, was billed the entire $19,292.59 and paid only $1,085.81. Under these circumstances, the evidence supports a finding that the October 31, 2006, write-off in the amount of $3,879.65 was related to the February 4, 2005, Medicaid reimbursement. As such, the district court did not err in excluding evidence of this particular write-off.

### III. Did The District Court Err In Denying Adamson's Motion For New Trial?

Given our decision, as set forth in the conclusion below, to remand this case for a new trial, it is unnecessary for us to consider Adamson's claim that the district court erred in denying her motion for a new trial on grounds that there was juror misconduct and that the jury came to its verdict under the influence of passion or prejudice.

### IV. Did The District Court Err In Denying Bicknell's Motion For Protective Order?

The final issue in this case is Bicknell's cross-appeal of the district court's decision to deny his motion for a protective order. In his motion, Bicknell requested that Adamson's attorney Patrick Smith be prevented from conducting Bicknell's deposition. At a hearing on the motion, the court declined to grant Bicknell's request and directed Smith to " 'be cautious' " in deposing Bicknell. Given the deposition went forward as planned, we find the issue raised by Bicknell in his cross-appeal is moot because there is no longer a remedy available in law. To that end, the controversy submitted by Bicknell on appeal already has been resolved and the only judgment that could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the case are concerned. See *In re M.R.*, 272 Kan. 1335, 1339, 38 P.3d 694 (2002).

### Conclusion

For the reasons set forth above, we reverse the district court's decision to deny Adamson's motion to amend petition to include punitive damages and accordingly remand for a new trial to include a claim for punitive damages. Moreover, we reverse the district court's decision to exclude evidence of medical expenses in the amount of $2,823.85 and $6,097.30, medical expenses which ultimately were written off by the medical provider as a bad debt and a commercial adjustment, respectively. At the new trial, the district court shall deem these expenses to be within the scope of the collateral source rule and therefore allow introduction of them as

evidence. Finally, we dismiss as moot the discovery issue raised by Bicknell in his cross-appeal.

Dismissed in part, reversed in part, and remanded with instructions.