No. 99,503

TAMMY J. ADAMSON, *Appellant/Cross-appellee*, v. KODY J. BICKNELL, *Appellee/Cross-appellant*.

(287 P.3d 274)

Opinion filed October 26, 2012.

*Patrick C. Smith*, of Loy Law Firm, L.L.C., of Pittsburg, argued the cause, and *Kurtis I. Loy*, of the same firm, was on the briefs for appellant/cross-appellee.

*Kevin M. McMaster*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. of Wichita, argued the cause, and *Jennifer M. Hill*, of the same firm, was with him on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

BILES, J.: Kody Bicknell seeks our review of a Court of Appeals decision permitting Tammy Adamson to pursue punitive damages in her lawsuit against him after Bicknell rear-ended Adamson's vehicle at a train crossing. The punitive damages claim was based, in part, on Bicknell's positive screening in a postcollision test for marijuana and cocaine, on his admission that he was smoking marijuana approximately 4 hours before the collision, and on a significant quantity of marijuana discovered in Bicknell's vehicle. He later acknowledged his drug consumption contributed to the collision. Bicknell also appeals from the panel's decision permitting Adamson to submit medical bill write-offs to the jury.

A majority of this court agrees with the panel's decision that the district court set a higher burden of proof for the punitive damages claim than statutorily necessary by requiring that Adamson provide what would amount to scientific evidence of Bicknell's impairment resulting from his admitted consumption of drugs. But the majority also holds that the panel erred in deciding that the district court should have permitted Adamson to amend for punitive damages based on the evidence as the panel perceived it. Such a holding evokes a fact-finding function on the part of the panel. See *Sall v. T's, Inc.*, 281 Kan. 1355, 1362, 136 P.3d 471 (2006) ("The Court of Appeals sits not as a finder of fact but as an appellate court."). The case is remanded to the district court for rehearing on that issue and application of the proper legal standard. A minority of this court agrees with the district court's ruling. On the medical bill write-off question, we unanimously hold that the Court of Appeals erred in reaching the merits because the issue was not preserved for appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2003, Bicknell rear-ended Adamson's car as she waited in traffic at a railroad crossing. Just before impact, Adamson saw Bicknell's truck quickly approaching from behind. She unsuccessfully attempted to move her vehicle to avoid the collision. Adamson's car was struck and in a chain reaction collided into another vehicle stopped in front of her. Adamson checked herself into a hospital that evening complaining of a stiff neck, shoulder, and back. Adamson eventually underwent several surgeries and physical therapy.

The Kansas Highway Patrol trooper investigating the accident testified in a discovery deposition that he smelled alcohol and both burned and raw marijuana coming from Bicknell's vehicle. A marijuana pipe, 19 bags of marijuana, empty cans of alcoholic beverages, prescription bottles under Bicknell's name, and a digital scale with residue were found inside Bicknell's truck. Bicknell told the trooper the accident was his fault. The trooper later testified that he believed the collision occurred because Bicknell "fail[ed] to give full time and attention to the roadway." The trooper also said he believed drug use may have contributed to the accident by causing Bicknell to have a diminished ability to perform tasks and a hampered and divided attention level.

Bicknell was taken to a hospital for urine and blood testing in accordance with protocol for a crash of such severity and because drugs were found in his vehicle. He tested negative for alcohol, but positive for both marijuana and cocaine. Bicknell was subsequently charged with multiple drug offenses. He ultimately entered a 12-month diversion agreement for driving under the influence, in which he stipulated that on the day of the crash, he operated his vehicle while under the influence of alcohol or drugs and tested positive for marijuana and cocaine.

### District Court Proceedings: Punitive Damages

Adamson sued Bicknell for her personal injuries caused by his negligence in operating his motor vehicle by failing to keep a proper lookout; driving too fast for the existing road conditions; following too closely to other vehicles; failing to stop, swerve, or

otherwise take action to avoid colliding with Adamson; and driving "under the influence." As permitted by statute and based upon the litigation's discovery record, Adamson filed a motion to amend her claims to add punitive damages, alleging there was sufficient evidence of wanton conduct based on Bicknell's impairment to prevail on a punitive damages claim. See K.S.A. 60-3703 (detailing procedure for adding punitive damages to a tort claim).

Adamson supported the punitive damages motion with the following: (1) Bicknell's deposition testimony in which he said he had not been paying attention to traffic and that his attention was diverted from the roadway as he approached the train stop; (2) Bicknell's admission he smoked marijuana earlier that same day; (3) his response when asked whether the marijuana impaired him, in which he replied, "At the time I definitely would have said no, that it did not impair me. But now looking back at it, and not doing that stuff for a long time, I'm sure it did have some affect with why I got in the wreck"; (4) the collision's occurrence on a clear afternoon with no obstructions interfering with Bicknell's view; (5) the discovery in Bicknell's vehicle of several baggies of marijuana, a marijuana pipe, a digital scale, and empty alcoholic beverage containers; (6) testimony from Bicknell's passenger that the drugs in the vehicle belonged to Bicknell; (7) the passenger's testimony that he did not smell marijuana when he entered Bicknell's vehicle earlier that day; (8) the trooper's testimony about smelling burnt and raw marijuana after the collision; and (9) the force and circumstances of the collision.

Adamson argued Bicknell's marijuana use that day impaired his ability to focus and pay attention to the roadway and that at the time of the accident Bicknell was driving in an impaired state from alcohol and marijuana. Adamson further argued it was reasonable to assume Bicknell was "deeply" involved in marijuana based on the amount of it located in his vehicle and that he knew the effects and chose to drive in an impaired state in a "callous disregard for the consequences."

In Bicknell's response, he claimed the trooper's accident report never mentioned Bicknell was impaired or intoxicated, although a review of the report shows it indicated illegal drugs were present

at the scene and contributed to the crash. Bicknell also noted there was no mention in the report that the trooper smelled alcohol or burnt or raw marijuana when approaching the vehicle and that there was no evidence Bicknell was smoking marijuana while driving.

Bicknell argued that Adamson failed to demonstrate that drug impairment was the proximate cause of the crash because there was no evidence quantifying the amount of marijuana or cocaine in Bicknell's system, how long either drug had been in his system, or that a positive drug screen resulted in an impaired driver. The KBI lab toxicology report noted a positive screening for marijuana and cocaine, but not the amount or level of drugs detected.

The district court denied Adamson's motion to add a punitive damages claim. It acknowledged there was evidence of drugs but found that evidence did not conclusively show Bicknell was under the influence or, if he was, the extent that it would have contributed to the crash. The district court noted the trooper testified only that he smelled "burnt" marijuana, not "burning" marijuana, and did not check to see if the marijuana pipe found in Bicknell's vehicle was warm, which might indicate recent use. The court also noted the trooper said Bicknell appeared alert and oriented at the scene. The court also found that while the trooper showed marijuana was in the vehicle, there was no evidence that Bicknell was under the influence of it.

The district court further found that a rational fact-finder would consider Bicknell's admission in his diversion agreement with a "jaundiced eye" because he might have entered the agreement simply to avoid prosecution on other charges. In addition, the court said Bicknell's "admission" that smoking marijuana played a role in the accident came after Bicknell attended counseling, was drug-free, and understood the impairing effects of drugs. To the district court, Bicknell's admissions fell short of the quality necessary to constitute clear and convincing evidence. The district court then stated:

"[T]he court concludes that plaintiff can establish that defendant smoked marijuana approximately four hours before the accident and that defendant's urine tested positive for marijuana and cocaine. *Plaintiff has presented nothing of evi-*

*dentiary value to quantify the amount of marijuana or cocaine in defendant's system at the time of the accident, nor anything of evidentiary value to demonstrate that the quantity of drugs in defendant's system was sufficient to affect defendant's ability to operate a motor vehicle."* (Emphasis added.)

Based on these perceived gaps in the evidence, the district court held it unlikely that Adamson could prove by clear and convincing evidence that Bicknell was under the influence of drugs to such a degree that operating a vehicle constituted willful or wanton conduct and, accordingly, denied her motion.

In response to the ruling, Adamson filed a motion for reconsideration, attaching an affidavit from a witness who claimed to have seen Bicknell driving at a high rate of speed in an "erratic" manner just before the collision. But the district court again denied Adamson's motion, holding that while such erratic driving is consistent with a DUI, it is also consistent with simple negligence. The court also discounted a new report written by a KBI toxicologist, stating that the effects of cocaine can last from minutes to hours while the effects of marijuana can last from 2-24 hours. The court said this information only confirmed its previous decision and again held there was insufficient evidence to afford a trier of fact clear and convincing evidence the accident was caused because Bicknell was under the influence.

*District Court Proceedings: Medical Bill Write-offs*

Bicknell filed a pretrial motion in limine seeking to restrict Adamson's medical bills evidence to only the amount paid by Medicaid and to exclude any portion billed that was eventually written-off by the hospital or not submitted by health care providers. Adamson argued she should be permitted to submit all outstanding or written-off medical bills, which totaled $42,579.34. Adamson claimed those write-offs were not subject to analysis under *Bates v. Hogg*, 22 Kan. App. 2d 702, 921 P.2d 249, *rev. denied* 260 Kan. 991 (1996), a case in which the Court of Appeals held that there is an exception to the collateral source rule for write-offs made by providers under reimbursement agreements with Medicaid. Included in the amounts Adamson claimed was a $3,879.65 in-network or hospital write-off, a $2,823.85 bad debt write-off, and a

$6,097.30 commercial adjustment. An authentic bill of the total amount charged and paid is not in the record, although the parties provide various documents made in preparation for trial purportedly reflecting the total medical bills.

In ruling on the motion, the district court allowed Adamson to present "sanitized" versions of what Medicaid paid in the amount of $23,016.13. The district court also said it would allow Adamson to put into evidence $4,781 paid by personal injury protection insurance (PIP), and $187.09 in out-of-pocket expenses, for a total of $27,984.23. The court said it would not allow any hospital or insurance write-offs because Adamson had Medicaid available to her.

To comply with the order, the parties stipulated to an exhibit in which they agreed that the reasonable amount of medical expenses totaled $26,346.21. The jury awarded Adamson $23,600, including $11,100 for medical expenses to date; $7,500 for economic loss to date; and $5,500 for noneconomic loss to date. There was no award for future noneconomic loss.

In a posttrial hearing on her motion for new trial, Adamson for the first time asked the district court to overturn *Bates.* In doing so, Adamson argued it was "baloney" to prohibit her from submitting anything more than just a fraction of total medical cost. She contended the better method would have been for the court to allow her to submit the entire bill and let the court cut out certain write-offs and reduce the total afterwards. This method, Adamson claimed, would have helped prevent jury confusion about why the stipulated amount of $26,346.21 was so low in comparison with the testimony reflecting much more extensive medical treatment. The district court denied Adamson's motion, saying it was bound by *Bates.*

### Court of Appeals Decision

On appeal, the Court of Appeals reversed the trial court's denial of Adamson's motion seeking punitive damages. *Adamson v. Bicknell,* 41 Kan. App. 2d 958, 207 P.3d 265 (2009), *rev. granted* March 31, 2010. That court summarized the district court's ruling as follows:

"[T]he district court determined that Adamson failed to establish the precise amount of marijuana and cocaine in Bicknell's system at the time of the accident and that, without evidence to quantify the presence of drugs, it was unlikely Adamson would be able to prove by clear and convincing evidence at trial that Bicknell acted wantonly. [Citations omitted.]" 41 Kan. App. 2d at 966.

The panel held that the district court abused its discretion because a reasonable factfinder could determine by clear and convincing evidence that Bicknell's conduct was wanton. The court said there was "simply no dispute" that Bicknell was under the influence, regardless of the extent of that impairment. The court held that whether wanton conduct existed was not premised on the amount of drugs in Bicknell's system, but on Bicknell's choice to drive under circumstances that would likely cause a collision. The panel relied on *Reeves v. Carlson*, 266 Kan. 310, 313-16, 969 P.2d 252 (1998), in which this court previously discussed "wanton conduct" in a case involving a driver who crashed into the plaintiff's house while driving under the influence of alcohol, stating: "Wantonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence." 266 Kan. at 314. The panel then concluded:

"[W]e do not believe that a lack of evidence regarding intoxication beyond the legal limit and/or the precise quantity of marijuana and cocaine in Bicknell's system at the time of the accident is fatal to Adamson's claim that Bicknell was completely indifferent to the probable consequences of his actions. Wanton conduct is not premised on the existence of a minimum level of intoxication or quantity of drugs in the system. In fact, finding that the drugs ingested by Bicknell did or did not cause Bicknell to crash into Adamson's vehicle is immaterial to our analysis of whether Bicknell engaged in wanton behavior. The 'wanton conduct' giving rise to the claim for punitive damages 'was not the collision, but [Bicknell's] choice to drive under the circumstances that would likely or probably result in a collision.' " *Adamson*, 41 Kan. App. 2d at 966 (citing *Reeves*, 266 Kan. at 314-15).

On the medical bill write-off issue, the Court of Appeals held that the district court erred in not admitting the $2,823.85 "bad debt" write-off, because it was self-paid by Adamson, and the $6,097.30 "commercial adjustment" write-off. But it did uphold the exclusion of one write-off amounting to $3,879.65 after finding it was related to Medicaid. *Adamson*, 41 Kan. App. 2d at 970-71.

Bicknell filed a timely petition for review raising two issues. First, he argued the Court of Appeals expanded the definition of "wanton conduct" in the punitive damages context "to include every incidence of driving under the influence of drugs or alcohol." He claimed the Court of Appeals failed to address the evidence— or lack thereof—regarding Bicknell's mental state before the crash and that Adamson also failed to demonstrate that Bicknell was aware of his impairment at the time of the crash and drove anyway. Second, Bicknell argued that the panel should have followed *Bates* on the medical write-off evidence and erred in finding that Adamson could submit her additional medical expenses even though she was a covered Medicaid recipient. We granted review on both issues. Our jurisdiction arises under K.S.A. 20-3018(b) (review of Court of Appeals decision).

### PUNITIVE DAMAGES

Bicknell first argues that the district court correctly denied Adamson's punitive damages claim and the Court of Appeals erred in reversing it. He argues Adamson is not entitled to a new trial on punitive damages as ordered by the panel.

*Standard of Review*

K.S.A. 60-3703 provides a district court with discretion to permit an amendment for punitive damages. This triggers appellate court review of a district court's ruling under an abuse of discretion standard. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689, 984 P.2d 719 (1999).

Judicial discretion is abused if judicial action is: (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. McCullough*, 293 Kan. 970, 980-81, 270 P.3d 1142 (2012); see also *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 804, 897 P.2d

123 (1995) (abuse of discretion considered in punitive damages case).

*Discussion*

Punitive damages are awarded to punish the wrongdoer for "malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 366, 837 P.2d 330 (1992) (citing *Folks v. Kansas Power & Light Co.*, 243 Kan. 57, Syl. ¶ 6, 755 P.2d 1319 [1988]). Punitive damages are awarded on the theory that the defendant deserves punishment for his or her wrongful acts. *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1324, 136 P.3d 428 (2006).

K.S.A. 60-3703 controls a plaintiff's ability to pursue punitive damages by requiring that the district court act as a gatekeeper to determine what claims may be filed based on the statutory criteria. The statute provides that a trial court may permit a punitive damages claim to go forward if the plaintiff establishes "that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209." K.S.A. 60-3703. The term "probability" means "more likely than not." *Fusaro*, 257 Kan. at 801.

And while the ultimate inquiry is whether the plaintiff will *probably* prevail on the claim, the court must consider the "clear and convincing" evidentiary standard the plaintiff will eventually need to meet at trial. 257 Kan. at 801-02. This standard is set by K.S.A. 60-3702(c), which provides that a plaintiff must prove by clear and convincing evidence that the defendant acted toward the plaintiff with " 'willful conduct, wanton conduct, fraud, or malice.' " In making this determination, the district court must consider the evidence in the light most favorable to the moving party, but it cannot make credibility determinations, weigh evidence, or draw inferences from the facts, as those are left to the jury. *Lindsey*, 267 Kan. at 689; *Fusaro*, 257 Kan. at 802.

In this case, the district court framed the question as whether it was likely Adamson could prove by clear and convincing evidence that Bicknell was under the influence of drugs to such a degree

that Bicknell's operation of his vehicle at the time of the collision constituted willful or wanton conduct. It held it unlikely Adamson could meet that standard and said that a rational factfinder could not conclude: (1) "the defendant was smoking marijuana (or cocaine) while he was operating his vehicle"; (2) the defendant had smoked marijuana less than 4 hours before the accident; or (3) the marijuana smoked 4 hours prior to the accident was sufficient to affect defendant's ability to safely operate his vehicle. Although it acknowledged Adamson could establish Bicknell tested positive for marijuana and cocaine, the court required Adamson to further establish a scientific basis to "quantify" the amount of drugs in Bicknell's system and "demonstrate that the quantity of drugs in defendant's system was sufficient to affect defendant's ability to operate a motor vehicle." In short, the district court was looking for evidence that the drug use caused the accident. This analysis sets the bar too high.

To the district court, the absence of scientific evidence establishing Bicknell's degree of impairment meant that no reasonable jury could find Adamson was entitled to punitive damages. But the inquiry should have focused on the act Bicknell allegedly performed, *i.e.*, his choice to drive under circumstances that would likely cause a collision. Thus, this court holds that the district court abused its discretion by focusing so narrowly on the evidence of drug impairment levels. As we said in *Reeves*:

"One who with knowledge of existing conditions and aware from such knowledge that injury or death will likely or probably result from his or her conduct, and with reckless indifference to the consequences, consciously does some act or omits to discharge some duty, which produces the injurious result, is guilty of willful or wanton conduct." *Reeves*, 266 Kan. at 315.

The evidence as framed by Adamson in support of her request to amend for punitive damages required the district court to consider whether Bicknell realized the imminence of injury to others and refrained from taking steps to prevent that injury because of indifference to the ultimate outcome that resulted based upon that evidence. The district court applied the incorrect legal standard and its abuse of discretion was based on an error of law, *i.e.*, the discretion was guided by an erroneous legal conclusion.

Establishing wanton conduct is a two-step process. First, a plaintiff must show that the act was "performed with a realization of the imminence of danger," and, second, that the act was performed with "reckless disregard or complete indifference to the probable consequences of the act." *Reeves*, 266 Kan. 310 Syl. ¶¶ 3, 4. "Wantonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence." *Reeves*, 266 Kan. at 314; see also *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244-45 (10th Cir. 2009) (discussing *Reeve's* two-pronged test). The plaintiff does not need to prove intent to injure. *Reeves*, 266 Kan. at 314.

On a sliding scale, wanton behavior falls between negligent behavior and willful or malicious misconduct. Wanton acts are those showing that the defendant realized the imminence of injury to others and refrained from taking steps to prevent injury because of indifference to the ultimate outcome, not that the defendant lacked simple due care. In other words, "the actor [must] have *reason to believe* his act may injure another, and [commits the act anyway,] being indifferent to whether or not it injures [another]." (Emphasis added.) *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 666, 157 P.2d 822 (1945); see also *Elliott v. Peters*, 163 Kan. 631, 634, 185 P.2d 139 (1947) ("[W]antonness involves a state of mind indicating indifference to known circumstances. . . . There is a potent element of consciousness of danger in wantonness.").

This court has found wanton conduct in several prior cases. In *Smith v. Printup*, 254 Kan. 315, 866 P.2d 985 (1993), this court affirmed the district court's decision to submit the plaintiff's claim of wantonness to the jury after the defendant collided with an oncoming car, wrecking his moving company's van, and killing two people. The defendant had numerous log violations, and there were significant discrepancies in the defendant's testimony about his activity the day of the accident, such as what time he left his beginning location and what time he delivered furniture. Moreover, the defendant acknowledged that he knew it was reckless if he worked 17-18 hour days, yet he worked nearly that amount on the day of the accident. The defendant also admitted that his trailer began to fishtail just before the accident due to slick roads, but he

did not reduce his speed even though he knew he was losing control. Under those circumstances, this court held that the definition of wantonness had been met. 254 Kan. at 358-59.

This court also upheld a jury's punitive damages award based on the defendant's wanton conduct when he drove while intoxicated, ran a stop sign, and hit the plaintiff's house. See *Reeves*, 266 Kan. at 314-16. On appeal, the defendant argued that there was insufficient evidence to support the jury's finding that he acted with willful or wanton conduct, fraud, or malice. The *Reeves* court held: "The keys to a finding of wantonness are the knowledge of a dangerous condition and indifference to the consequences." 266 Kan. at 314. It held the defendant's knowledge of the dangerous condition was clearly established, stating:

"[The defendant] acknowledges he was acutely aware of the risk he was taking when he decided to drive his employer's pickup truck in his extremely intoxicated state at night on wet residential streets. Clearly by [the defendant's] own admission, there is sufficient evidence to support the trier of facts' finding that Carlson acted recklessly and possessed the requisite degree of knowledge of danger." 266 Kan. at 314.

But even with this, the defendant argued the wantonness standard was still not met. He claimed that even though he had admitted to realizing the risk of driving impaired, he was not indifferent to that risk because he claimed he drove as carefully as possible and tried to brake to avoid the collision. In addressing this argument, the *Reeves* court noted the defendant's argument focused on the wrong conduct. Punitive damages, we held, were assessed based on the defendant's wanton conduct of choosing to drive under circumstances that would likely or probably result in a collision, not on the collision itself. The defendant's "precautions and care . . . did little, if anything, to reduce that risk." 266 Kan. at 315.

The *Reeves* court concluded that the measures the defendant took were "predictably insufficient" to reduce the obvious risk and the "minimal care under the circumstances was that [the defendant] not drive." 266 Kan. at 315. Since the defendant admitted he realized the dangers involved in driving and the court had found the defendant was indifferent to the probable consequences, this

court affirmed the jury's finding of wanton conduct. 266 Kan. at 315-16.

The Court of Appeals in this case cited *Reeves* when concluding that the district court should have submitted Adamson's punitive damages claim to the jury. But the panel focused solely on the second step in the analysis—the *Reeves* court's examination of whether that defendant behaved indifferently. The panel quoted *Reeves* as establishing that the conduct at issue was Bicknell's choice to drive under circumstances likely to result in a collision. *Adamson*, 41 Kan. App. 2d at 966-67. The panel then concluded that the evidence sufficiently established that Bicknell "recklessly disregarded the likely result of his conduct." 41 Kan. App. 2d at 967. The Court of Appeals, however, failed to address the first question, *i.e.*, whether Bicknell *knew* the risk and drove "with knowledge of a dangerous condition." See *Reeves*, 266 Kan. at 314-16.

Certainly, the facts in this case are similar to *Reeves* because Bicknell drove after consuming marijuana and cocaine and later admitted his drug use affected his driving. But the evidence regarding knowledge of the risk at the time Bicknell drove is different. And on this point, *Reeves* offers no helpful analysis because the defendant in that case "acknowledge[ed] he was acutely aware of the risk he was taking." 266 Kan. at 314. In contrast, Bicknell testified "[a]t the time I definitely would have said no, that it did not impair me. But now looking back at it, and not doing that stuff for a long time, I'm sure it did have some affect with why I got in the wreck."

Obviously, the court must consider all the evidence cited by Adamson in her motions seeking punitive damages, not just Bicknell's testimony. But the evidence of Bicknell's knowledge of his impairment presents a closer question than the Court of Appeals acknowledged, and it should not have made the findings reserved to the district court. For that reason, we remand to the district court for a rehearing on Adamson's motion seeking punitive damages because factual findings must still be made.

On rehearing, the district court should consider the same evidence cited by Adamson in her original motion and the motion for

reconsideration. In summary, this evidence includes the deposition testimony that the crash occurred on a clear day, Bicknell's apparent inability to control his vehicle to avoid rear-ending Adamson's car, his on-scene admission to the trooper that the accident was his fault, the medical test results indicating that both marijuana and cocaine were present in Bicknell's system at the time of the accident, and the investigating trooper's conclusion that drugs contributed to the crash and his report that drugs were found in Bicknell's vehicle. The district court should also consider Bicknell's postcrash deposition testimony, which includes his statement that only in retrospect did he believe his driving under the influence contributed to the crash. Finally, the district court should consider Bicknell's admission that his eyes were off the road before the crash, that he saw Adamson's car "quite a ways" ahead, and that eyewitnesses observed him driving at a high rate of speed and zigzagging in and out of traffic before the accident.

## COLLATERAL SOURCE

It is unnecessary to delve too deeply into this issue because it is not preserved for appeal.

Adamson effectively challenged only the difference between her original request to admit $42,579.34 and the $23,600 awarded by the jury. In doing so, she acquiesced to the amount of reasonable medical expenses as the amount paid, waiving her right to argue on appeal that evidence of the amount written-off was also admissible. Going into trial, Adamson accepted *Bates* as controlling admissibility of her Medicaid insurance.

More importantly, Adamson stipulated through the admission of a prepared trial exhibit that her reasonable medical expenses were $26,346.21. At trial, Adamson's attorney said the parties jointly agreed to the exhibit in order to assist the jury and to avoid going through all the medical bills. Adamson's attorney said, "The parties have agreed that the amounts set out by the various providers are the reasonable and customary charge for the services for which plaintiff claims were incurred as a result of this automobile accident."

Adamson was required under K.S.A. 60-404 to timely interpose on the record a clear and specific objection in order to preserve the issue for appeal. See *State v. Flynn*, 274 Kan. 473, 496, 55 P.3d 324 (2002). It was not enough under the statute for Adamson to have challenged the issue by a motion in limine because an objection must be made at trial. And when the issue was raised at trial and the court said it would not allow Adamson to admit all her medical expenses, Adamson did not object. In addition, when the court finished explaining its ruling that Adamson could show what Medicaid paid as well as PIP and out-of-pocket expenses, it asked if the parties were ready to proceed with trial—Adamson's attorney replied yes, and again no objection was made. The Court of Appeals erroneously considered the issue. Accordingly, its decision on this point is reversed and the district court's original ruling is affirmed.

The Court of Appeals decision is affirmed in part and reversed in part. The district court's decision is affirmed in part and reversed in part, and the case is remanded with directions to the district court for further proceedings.

MORITZ, J., not participating.

DANIEL L. MITCHELL, District Judge, assigned.

* * *

LUCKERT, J., concurring in part and dissenting in part: I respectfully dissent from the majority's decision to reverse the district court's denial of Tammy J. Adamson's motion to amend to add a claim for punitive damages. I concur in the majority's conclusion that Adamson did not preserve the second issue regarding the admissibility of medical bill write-offs.

Regarding the punitive damages issue, I agree with much of the majority's analysis but disagree with its conclusion that the district

court imposed the incorrect legal requirement. More specifically, I agree with the majority's discussion of the standard a district court should apply when ruling on a motion for punitive damages, its summary of the caselaw relating to the definition of wantonness, and its summary of the caselaw regarding application of a wantonness standard in the situation where the allegation is that a defendant engaged in wanton conduct by driving a motor vehicle while impaired by the influence of drugs or alcohol. Where I depart from the majority's analysis is in its ultimate conclusion that the district court erred when it stated:

"[T]he court concludes that plaintiff can establish that defendant smoked marijuana approximately four hours before the accident and that defendant's urine tested positive for marijuana and cocaine. Plaintiff has presented nothing of evidentiary value to quantify the amount of marijuana or cocaine in defendant's system at the time of the accident, nor anything of evidentiary value to demonstrate that the quantity of drugs in defendant's system was sufficient to affect defendant's ability to operate a motor vehicle."

The majority reads these statements as imposing an incorrect legal standard. See *Adamson v. Bicknell*, (No. 99,503, this day decided), slip op. at 13-14. In my view, when these statements are considered in the context of the district court's entire order, they merely reflect the district court's conclusion that the evidence of wanton conduct is not clear and convincing and, consequently, that Adamson did not meet her burden of establishing a reasonable probability that a jury would award punitive damages.

The statements on which the majority focuses are at the end of a section of the district court's order that begins with the following sentence, which reflects the ultimate basis of the district court's ruling:

"After considering all evidence in the record, and making all reasonable inferences in favor of plaintiff, the court concludes that it is unlikely that plaintiff can prove by clear and convincing evidence that defendant was under the influence of drugs to such a degree that defendant's operation of his vehicle at the time in question constituted willful or wanton conduct, and thus denies plaintiff's motion to amend to add a claim for punitive damages."

The district court then supported this conclusion with a number of points. First, the district court considered the evidence regard-

ing the observations of the highway patrol trooper who investigated the accident. The district court noted that even though the investigating officer provided "clear and convincing evidence that defendant possessed marijuana and drug paraphernalia and had the intent to sell the marijuana . . . , he offer[ed] no clear and convincing evidence that defendant was under the influence of marijuana at the time of the accident." The district court continued by stating, "[I]n fact, [the investigating officer] testified that, based on his short interview of defendant, defendant was alert, oriented and cooperative."

Second, the district court discounted Adamson's argument that clear and convincing evidence of Kody Bicknell's impairment was provided because Bicknell had executed a diversion agreement in which he stipulated he was under the influence of drugs at the time of the accident. The district court noted the stipulation did not include a statement that Bicknell was under the influence to the point of being unable to safely operate a vehicle. More significantly, according to the district court, the fact Bicknell originally faced felony charges that were reduced to misdemeanors when he agreed to the diversion meant that "any rational trier of facts would consider defendant's 'admission' that he was driving under the influence of drugs with a jaundiced eye."

Third, the district court focused on Bicknell's deposition testimony regarding his posttreatment realization that he was probably impaired at the time of the accident. This statement, the district court concluded, was "sufficiently qualified that, either standing alone or in context with all other evidence, it falls short of the quality necessary to constitute clear and convincing evidence that defendant was under the influence of drugs that rendered him incapable of safely operating his vehicle at the time of the accident."

These conclusions were followed by the statements on which the majority focuses. As quoted above, in these statements the district court noted that Adamson established Bicknell's use of drugs at least 4 hours before the accident. She could not, however, according to the district court, establish that the use of drugs impaired Bicknell's ability to safely operate his vehicle. Having reviewed the

circumstantial evidence on which Adamson had relied and the witness' testimony, the district court focused on potential scientific evidence and noted that Adamson had no evidence of the amount of drugs in Bicknell's system. Without either scientific or persuasive circumstantial evidence, Adamson was left, the district court concluded, with nothing "of evidentiary value to demonstrate that the quantity of drugs in defendant's system was sufficient to affect defendant's ability to operate a motor vehicle."

Contrary to the majority's conclusion, these statements do not mean the district court *required* Adamson to present evidence that the level of drugs exceeded a specific amount; rather, the district court systematically examined the evidence for proof of impairment. By noting there was no scientific evidence, the district court was merely checking off yet another way—at least the fourth by my count—in which the evidence failed to clearly and convincingly prove Bicknell was impaired. If Bicknell was not impaired, there could be no basis for him to have a reason to believe his driving would injure another; he could not have acted with a realization of the imminence of danger or with reckless disregard or complete indifference to the probable consequences of the act as required by the wantonness test stated in *Reeves v. Carlson*, 266 Kan. 310, 313-14, 969 P.2d 252 (1998); see *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 666, 157 P.2d 822 (1945).

The district court's ruling, in my view, fully complied with the majority's initial summary of the *Reeves* wantonness test and the majority's direction to the district court to focus on "the act Bicknell allegedly performed, *i.e.*, his choice to drive under circumstances that would likely cause a collision." *Adamson*, slip op. at 13. This directive essentially asks the district court to look at the circumstances before the accident and weigh the probability that a jury would find the driver was impaired and that the driver was aware that his or her impaired driving would put others at risk. The district court already undertook this prospective examination and found the evidence wanting in this case, concluding it was not probable a jury would find that Bicknell was impaired to the point of being incapable of safely operating a vehicle.

The majority later directs the district court on remand to engage in a retrospective analysis by considering

"the deposition testimony that the crash occurred on a clear day, Bicknell's apparent inability to control his vehicle to avoid rear-ending Adamson's car, his on-scene admission to the trooper that the accident was his fault, the medical test results indicating that both marijuana and cocaine were present in Bicknell's system at the time of the accident, and the investigating trooper's conclusion drugs contributed to the crash and his report that drugs were found in Bicknell's vehicle. The district court should also consider Bicknell's postcrash deposition testimony, which includes his statement that only in retrospect did he believe his driving under the influence contributed to the crash. Finally, the district court should consider Bicknell's admission that his eyes were off the road before the crash, that he saw Adamson's car 'quite a ways' ahead, and that eyewitnesses observed him driving at a high rate of speed and zigzagging in and out of traffic before the accident." *Adamson*, slip op. at 17.

Only the last sentence regarding Bicknell's admission suggests prospective factors that might have indicated to Bicknell that he was impaired and that his driving while impaired created an imminent danger. In all other respects, these considerations retrospectively focus on the *cause* of the accident. Yet, the majority had earlier stated that the district court erred by "looking for evidence that the drug use caused the accident. This analysis sets the bar too high." *Adamson*, slip op. at 13. These conflicting directions leave the district court with a difficult and inconsistent task on remand and also underscore the shifting focus and inconsistency of the majority's analysis.

The district court applied the correct legal standard—the wantonness test as initially stated by the majority—when the court examined the evidence regarding whether Bicknell drove while impaired to the point of being unable to safely drive a vehicle. Consequently, in this appeal, this court's task should be to review the district court's conclusion that the evidence was not sufficiently clear and convincing to make it probable that a jury would return a verdict for punitive damages. The standard for that review is the traditional abuse of discretion test as stated in *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 804, 897 P.2d 123 (1995). Under that test, a district court abuses its discretion when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying

that discretion is abused when no reasonable person would take the view adopted by the trial court. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). This test is not whether reasonable people would disagree with the district court's decision or even whether we are firmly convinced that most reasonable people would disagree with the decision. Indeed, as long as another reasonable person would agree with the district court, we must affirm, even if we personally disagree with the district court. Applying this standard, I cannot say that the district judge is the only reasonable person who would have concluded that Adamson did not meet her burden to establish clear and convincing evidence of wanton conduct to support the probability of a punitive damages award.

Consequently, I would affirm the district court's decision to deny Adamson's motion to amend to add a claim for punitive damages.

BEIER and JOHNSON, JJ., join in the foregoing concurring and dissenting opinion.